[Civ. No. 5508. Third Appellate District.—May 15, 1936.]

BERNARD H. SCOTT, Respondent, v. ANDREW PAUL FLANAGAN et al., Appellants.

[Civ. No. 5509. Third Appellate District.—May 15, 1936.]

MRS. RAYFORD DAVIS, as Administratrix, etc., Respondent, v. ANDREW PAUL FLANAGAN et al., Appellants.

Cooley, Crowley & Supple and Louis T. Milburn for Appellants.

C. Ray Robinson and James D. Garibaldi for Respondents.

PULLEN, P. J.—These appeals are from judgments in actions for damages awarded for the death of Donald Scott, aged nineteen years, and Berta Rideout, a young woman of twenty-two years of age, who were killed as a result of a collision between a Ford automobile in which they were riding, and an oil truck belonging to the Gilmore Oil Company,

on the Merced-Yosemite highway, at about 1:30 o'clock in the afternoon of August 11, 1934.

Andrew Paul Flanagan, one of the appellants herein, was operating the tank truck loaded with about four hundred or five hundred gallons of gasoline, and proceeding in an easterly direction toward Mariposa. At the point of collision the highway was straight for a long distance in both directions with a slight incline from the west toward the east. The highway consisted of a twenty-foot macadam surface with a white line down the center, and a twelve-foot shoulder of dirt and gravel on each side. The Ford car was proceeding westerly at about forty or forty-five miles an hour, with three occupants, Donald Scott, Berta A. Rideout and Cecelia Davis.

There is a conflict in the evidence as to where the collision occurred, but when the cars came to rest after the accident, the Gilmore truck was on its left or north side of the highway against the right of way fence and practically on top of the Ford, which was completely wrecked. Scott and Berta Rideout were killed instantly and Cecelia Davis died a few moments after reaching the hospital, without being able to make any statement of the cause of the accident.

The physical facts seem to indicate that the Ford was hit on its left side about the center, and the right front corner of the truck was damaged and crushed back. Various marks and scratches on the surface of the highway were noted and described, the most conspicuous being a semi-circular hole in the macadam about four feet north of the center line, made probably by the disc or hub of the left front wheel of the Ford from which the spokes had been torn by the impact.

It is the principal contention of appellants that the evidence does not justify or support the verdict and judgment. It is their theory that the Ford, just before the accident, was being driven on its left or south side of the highway, and in suddenly turning back across the path of the oncoming truck the two vehicles collided.

In support of this theory certain witnesses testified to finding tire marks upon the highway indicating that an automobile had been driven from twelve to eighteen inches south of the south half of the pavement and on the dirt shoulder, at a point about forty feet from the point of collision, and had swerved sharply toward the north and across the highway

toward the north. We do not recall that any of the eye-witnesses, other than Flanagan, testified however, that the Ford was driven over on to the dirt shoulder to the south of the white line. The jury therefore may have assumed that the tire marks testified to by certain witnesses were made by cars that passed after the accident. Flakes of red enamel from the truck were also found about eighteen inches south of the white line. Mr. Risley and Miss Hoffman, who were coming from Yosemite Valley to Merced, testified they were following behind the Ford about forty or fifty feet, and that the Ford was over on its left or wrong side of the road and had so traveled for at least one hundred feet just immediately prior to the accident. They further testified that just before the collision the Ford suddenly swerved back toward the center and its right side of the highway when about forty feet from the point of collision, and struck the right front corner of the truck. Others testified to skid marks of the truck, indicating the application of brakes on the south side of the highway about two feet from the white line.

Respondents contend that there was a direct conflict in the evidence as to whether the truck of appellant oil company was on the wrong side of the road or whether the car of decedents was on its wrong side, and that the physical facts support the contention the truck was on its left side of the highway. Inasmuch as certain of the evidence, the photographs received as exhibits, the verdict of the jury, the ruling of the trial judge on a motion for nonsuit, and for a directed verdict, and on a motion for judgment notwithstanding the verdict, and motion for a new trial, tend in varying degrees to support the contention of respondents, an appellate court will not readily disturb the conclusion of the court and jury.

It requires the citation of no authorities of which there are many in California, that a reviewing court in examining the sufficiency of the evidence to support a questioned finding, will accept as true all evidence tending to support the finding of the jury as well as all inferences which might reasonably lead to the same conclusion. That much of the evidence of respondents was disputed, is not here important. We are now interested only in that testimony which if believable, would lead by logical steps to the result found by the jury.

Respondents established by testimony of Flanagan and by M. P. Strong, branch manager of the Gilmore Oil Company of the district wherein the accident occurred, at the time of the accident, that the mechanical brakes on the truck, which applied to the rear wheels, were defective, and that the company had been notified of that fact in written weekly reports for three successive weeks, immediately preceding the accident.

Neither the court nor jury apparently gave the testimony of Risley or Miss Hoffman much weight. It is, however, within the exclusive province of the jury, to determine the degree of credibility they will give each witness. They have the opportunity of considering the manner in which the witness testifies, the character of his testimony, the bias or prejudice, if any, manifested, the interest or lack of interest in the issues, his motives, his intelligence whether good or bad, clear or indistinct, or whether or not the evidence is contradictory. Neither is a jury bound to decide in conformity with the declaration of any number of witnesses, which do not produce conviction in their minds against a less number, or against a presumption or other evidence satisfying their minds.

Risley testified he was riding in the front seat of the Chevrolet automobile following behind the Ford about forty or forty-five miles an hour. He first saw the truck as it came over the crest of the hill at about twenty-five miles an hour and the collision occurred about four hundred fifty feet easterly from the crest. Some time prior to seeing the truck on the crest of the rise the Ford, according to the witness, had crossed the white line and continued for more than one hundred feet to travel upon its left or south side of the highway with its right wheels about two feet south of the center line. Suddenly the Ford swerved toward its right, and the cars collided. At first the witness said the Ford struck the left front side of the truck and the impact occurred near the center of the highway on the right side thereof. After being temporarily excused from the stand to permit a witness to be called out of order, Mr. Risley was recalled, and when again asked as to the collision, he said it occurred south of the white line, and the left front of the Ford struck the truck on the right front end, causing the Ford to turn over and skid across the highway. The witness also placed the cars in such a position that the truck, going at approximately

twenty-five miles an hour would have to travel some four hundred feet while the Ford was traveling less than one hundred feet at the rate of forty miles an hour. The witness also testified that although they themselves were traveling about forty miles an hour, they brought their car to a stop within ten feet of the end of the truck after the collision. We refer to these discrepancies to show that the jury may have had some ground to reject the testimony of the witness and also that of Miss Hoffman, the driver of the car in which Risley was a passenger. She testified she did not see the truck until the instant of the impact. She placed the Ford entirely on the south side of the white line, its left wheels about two feet south of the white line, and that the left side of the Ford and the right side of the truck came together. The photographs in evidence seem to clearly indicate the Ford was struck on its left side about midway between the front and rear wheels, and the damage to the truck was to the right front corner of the radiator, fender and wheel. Officer Bertken, who arrived very soon after the accident, testified he found no marks of the Ford south of the center line; that the gouges and scratches on the pavement were about four feet from the center on the north side of the highway and extended three or four feet toward the north shoulder.

Flanagan, the driver of the oil truck, appears from the record before us to have been rather evasive and indefinite. He was an eye-witness to the accident, but counsel for respondents had considerable difficulty in getting a definite, unequivocal answer to simple questions. His testimony was replete with such expressions as "It must have been that way"; "Yes, it looks like that"; "I think so"; "Not exactly"; "Probably", "perhaps", "probably approximate", and other similar qualifying language. He testified he was driving with his outside wheels on the south shoulder of the highway as he proceeded in an easterly direction. He saw the Ford approaching about one hundred or two hundred yards ahead, driving on its proper side of the highway with its left wheels on the white line. When the Ford was about fifty or seventy-five feet away it suddenly cut across the path of the truck, going over on to the dirt shoulder and cutting back. The driver of the truck testified he swung slightly to the north or toward his left as the cars collided.

He had no recollection when he applied the brakes prior to the collision. There appears some discrepancy between the testimony of Flanagan, Risley and Miss Hoffman as to when the Ford crossed to its left over the white line. The latter two witnesses said the Ford was over the line before the truck came over the crest, whereas Flanagan said he saw the Ford on its proper side of the highway, until it was about fifty or seventy-five feet away, when it swerved suddenly to its left across his pathway. At that time he testified the truck was traveling on the south side of the highway with its right wheels just on the macadam. "Just a split second" before the impact he swung the truck toward the left, from a point three and one-half feet from the center line to a point eighteen inches from the center, and the impact occurred. In that event, while the truck was traveling that distance toward its left, the Ford was traveling fifty to seventy-five feet to the right, although the speed of the truck was about twenty-five miles an hour and that of the Ford forty to forty-five miles an hour. We mention these matters merely to show the conflict in the testimony of the only three persons who were eye-witnesses to the accident, to illustrate the difference and confusion in their testimony, and as giving some foundation for the lack of credence apparently placed therein by the jury.

 It is a very definite rule that an appellate court shall not lightly disturb a verdict of a jury. We have not had the opportunity afforded the jury to observe the witnesses or observe their demeanor upon the witness stand. Here, too, there was presented to a most able and experienced trial judge, a motion for a nonsuit and a directed verdict, both of which motions were denied. After the jury had resolved the various conflicts in favor of respondents, a motion was made for judgment notwithstanding the verdict, and also a motion for a new trial likewise denied. These various motions were fully argued by able counsel on both sides. Were the trial judge, who has presided over many intricate trials of issues of law and fact, not entirely satisfied with the findings of the jury, he would have undoubtedly seen the weakness of the evidence adduced by plaintiff, and would have corrected any mistakes of the jury in the many opportunities presented to him in the various motions made. We are satisfied that a real conflict in the evidence existed, and the jury, having

resolved those conflicts in favor of plaintiffs, and the cause having been reviewed and reconsidered by the trial judge, the judgment based upon that verdict will not now be disturbed by us upon review.

█ Appellants complain because a certain instruction was not given by the court. There is no evidence that the instruction was ever submitted to the trial judge nor is it found in the transcript, either among the instructions given or those refused. Section 607a of the Code of Civil Procedure provides how instructions shall be delivered to the judge presiding at the trial and served upon the opposing counsel. It does not appear that the instructions ever reached the trial judge.

█ Appellants also claim Berta Rideout was the driver of the Ford, and was guilty of negligence as a matter of law, which caused the collision. In the first place the jury rejected the theory of appellants that the Ford was being driven upon the wrong side of the highway. Also appellants have failed to establish that Berta Rideout was either driving the car or that she had direction or control over its operation.

Mr. Risley testified it was impossible to tell where the decedents had been seated in the car. He could not tell who had been the driver. Other witnesses testified to facts of similar import.

There are alleged errors claimed by appellant in regard to the giving of certain instructions, and errors and admission of evidence, but after examination we do not find them to have any materiality in regard to the outcome of this case.

█ It is also claimed the trial court erred in refusing to grant a new trial upon the ground of newly discovered evidence. This evidence consisted of a photograph taken some time after the accident, purporting to show wheel tracks found on the highway in support of the contention of appellants that the Ford swung across the path of the approaching truck. It is a well-established rule that the granting of a new trial rests largely in the discretion of the trial court, and will not be disturbed if it can be upheld upon any ground shown by the record. (*Smith* v. *Royer*, 181 Cal. 165, 166 [183 Pac. 660].) Where the motion is based upon the ground of newly discovered evidence it must appear that the evidence is new, material, and not cumulative. This proffered evidence, consisting of a single photograph, appears to

be cumulative, and upon that ground alone the court was warranted in denying the motion.

This case seems to have been thoroughly tried and the facts fully and fairly submitted to the jury, and thereafter the matter was carefully considered and reviewed by a trial judge of wide experience and recognized ability, who discovered no grounds to justify a new trial. After examining the record this court has come to the same conclusion. Neither do we find any error justifying reversal. The judgments appealed from are therefore affirmed.

Tuttle, J., *pro tem.*, and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1936.