[Civ. No. 15557.   Second Dist., Div. Three.   June 17, 1947.]

WILLIAM G. CALDWELL, Appellant, v. MILDRED J. CALDWELL et al., Respondents.

Joseph A. Ball and Louis N. Whealton for Appellant.

Denio, Hart, Taubman & Simpson for Respondents.

KINCAID, J. pro tem.—Plaintiff appeals from a judgment in favor of his daughter and son as defendants, following a trial by the court without a jury.

Plaintiff sues individually and by his second amended complaint also joins his wife, Jennie, as a party defendant. She

appears in propria persona by a guardian *ad litem* and by her answer admits all allegations of the complaint. She does not appeal from the resulting judgment. Plaintiff's pleading is in six counts, the first being to quiet title to certain real and personal property situate in Long Beach, California; the second alleges that on October 7, 1938, when plaintiff and Jennie signed a certain grant deed of property to their daughter and son, the defendants Mildred and Harry Caldwell, Jennie was an incompetent person and signed the instrument with no understanding of the nature or consequences of her act, and that the document was therefore void insofar as she was concerned; the third cause of action alleges the exercise of undue influence upon plaintiff and Jennie by their defendant children, as a result of which they were persuaded to sign said document; the fourth and fifth causes of action were dismissed by plaintiff at the time of trial, but a sixth cause of action claims an accounting due plaintiff by defendants Mildred and Harry for the rents, issues and profits of the property so conveyed. The trial court made its findings contrary to plaintiff's allegations and in favor of such defendants as to counts I, II, and III, and granted a nonsuit on the cause for an accounting, count VI.

While the evidence is conflicting in many particulars, the following facts were adduced in support of the judgment: Plaintiff and his wife had over a long period of time acquired substantial property holdings in the city of Long Beach, the most important of which is the Caldwell Apartments; in 1934, at the request of plaintiff, the defendant Mildred moved to Long Beach to assist plaintiff in the management and operation of this property; defendant Harry visited his parents frequently and the family relationships as between the parties were close; as the resources of plaintiff and his wife grew, and they became older, they took frequent vacation trips, leaving the management of their property more and more to Mildred; on several occasions plaintiff stated his desire and that of his wife to make a conveyance of their property to their children, reserving in some manner the use of the income therefrom so that they might be completely freed from responsibility in order to more enjoy their contemplated travels. In August, 1938, while plaintiff and his wife were preparing to go on an extensive trip, he suffered an illness described in the record as a "stroke" which partially paralyzed him on one side for a period of time; following this illness, plaintiff again broached the subject of the disposition of the property to his

children, first with a business associate and later with them; after discussing ways and means of vesting title to the property in his children, while reserving for his lifetime the use of the property, and providing for the care of his wife in the event of his prior demise, he directed his daughter to consult with an old-time friend and attorney, E. C. Denio, for the purpose of having documents drawn to carry this plan into effect; various documents were submitted to plaintiff and changes were made therein at his direction, resulting in the execution by plaintiff and his wife, on October 7, 1938, of a grant deed covering the real and personal property which is the subject of this litigation to the defendants, as joint tenants with right of survivorship, reserving to plaintiff a life estate with the right to use said property and to have and receive the rents, income and profits therefrom during the term of his natural life; further clauses for the protection of the grantors were also inserted therein. On the same date defendants Mildred and Harry entered into an agreement with plaintiff to the effect that if their mother Jennie should survive plaintiff, they would fully care for and support her in a proper manner, would care for her burial upon her death, and would each make a last will and testament providing that in the event of their death the property should be charged with the support and maintenance of Jennie in accordance with the contract; such wills were made; executed copies of the contract were delivered to plaintiff and his wife and on January 21, 1941, a copy of the said grant deed, as recorded, was forwarded by Mr. Denio to plaintiff and received by him; about one year after the execution of the deed and the contract, plaintiff called at the office of Mr. Denio and talked with him about this transaction.

Substantial evidence further discloses that during the entire period in question plaintiff was keen mentally, alert, and was fully possessed of all of his mental faculties, as was his wife, Jennie, excepting that her mind began to deteriorate somewhat in 1941, through senility.

Several nurses were hired from time to time to care for the wants of plaintiff and his wife. Mildred continued to live in the apartment house with plaintiff and Jennie until March, 1944, during all of which time she managed the place for plaintiff and turned over the income therefrom to him. A harmonious relationship existed between plaintiff, his wife, and their defendant children, during all of the intervening

period. An altercation then arose between plaintiff and Mildred concerning a particular female nurse who had been caring for plaintiff and his wife. Upon instructions from plaintiff, Mildred discharged this nurse, following which plaintiff wished to rehire her, to which Mildred objected. Plaintiff then ordered Mildred to leave the premises and demanded of his defendant children a return of the property which he had previously deeded them. An intimate friend of plaintiff and his wife, Mrs. Osborne, testified that plaintiff told her the circumstances of his demand for a return of the property, as follows: "A. Well, he spoke of Harry and Mildred, and we asked if the suit had really been filed and if they were going ahead with it, and he said yes, they were going ahead with it. And Mr. Osborne asked him what Harry and Mildred had done to cause him to take this action, and he went right on talking and didn't answer the question, and I waited for an opportunity and I said, 'Well, Mr. Caldwell, just what have Harry and Mildred done?' And he straightened up in his chair and he said, 'Why, they fired my nurse,' and that is the only excuse that was given. They fired his nurse."

Plaintiff argues the evidence establishes a confidential, fiduciary relationship to have existed between the parties at the time of the execution of the grant deed and the contract for support and that Mildred thereafter exercised the position of trustee for plaintiff and his wife in managing the property and collecting the income therefrom. Such being the case he contends the burden of proof rests on defendants to affirmatively show the transaction to have been fair and free from undue influence. The defendants have substantially met any such obligation of proof upon their part by showing, by competent evidence, the transaction to be one initiated by plaintiff after having expressed good and sufficient reasons therefor; that it was consummated after due deliberation, with independent advice and without undue activity on the part of defendant; that following its consummation it was confirmed by plaintiff's own statements to disinterested persons; the transaction is one natural, reasonable and fair under the circumstances; that plaintiff deprived himself of nothing other than the bare legal title to the property, having retained its possession at all times since, and that it was intended as a present and effective transaction *inter vivos*, the nature of which was at all times fully known to plaintiff. The evidence, taken as a whole, lends adequate support to the findings in

defendants' favor covering the issues raised by the first, second and third causes of action of plaintiff's second amended complaint, and being based upon conflicting testimony, those findings are binding upon this court on appeal. Such being the case, it is unnecessary for us to consider the questions raised concerning statutes of limitation affecting the institution by plaintiff of these proceedings.

■ Plaintiff further contends the court erred in granting defendants' motion for a nonsuit as to his sixth count, being the one involving the accounting. Weighing all of the evidence tending to sustain plaintiff's averments for an accounting, most favorably in his favor, such evidence still falls far short of proving this cause of action. The plaintiff at all times had full and free access to his own money, through bank accounts in his name and with full access to and control over the books and records concerning the receipts and expenditures of the property. At the request of plaintiff, Mildred paid all household and personal bills and plaintiff drew other sums for his needs, including those for vacation expenses for himself and wife. Plaintiff strongly relies on his testimony to the effect that he asked his son, Harry, to look over the books, and that Harry tried to look them over at one time but said he could not make anything of them; that this was in 1942 or 1943, but that plaintiff never did anything thereafter about the books. This evidence, when considered with the other evidence in the case is insufficient for a prima facie case for an accounting, and the nonsuit was properly granted.

■ The judgment having been entered, plaintiff in due time, on December 17, 1945, served and filed his notice of intention to move for a new trial. Solely by error of the clerk of the court this motion was set for hearing on the 61st day following the filing of such notice, rather than within 60 days as provided by section 660, Code of Civil Procedure. Defendants raised the objection that the court had lost jurisdiction to rule on the motion and the trial judge declined to rule thereon but caused a minute order to be entered stating the "motion was argued, and the court denies the motion for a new trial by operation of law, in that the time for hearing said motion has expired." Section 660 further provides: "If such motion is not determined within said period of sixty (60) days, or within said period as thus extended, the effect shall be a denial of the motion without further order of the court." Defendants contend that, no hearing having been

held for the consideration of plaintiff's written notice of intention to move for a new trial and no oral motion having actually been made, there is nothing for the trial judge to have passed upon and therefore the status of the case is as though no notice of intention to move for a new trial had ever been filed. Section 659, Code of Civil Procedure, provides, in part, however: "Said notice [of intention to move for a new trial] shall be deemed to be a motion for a new trial on all the grounds stated in the notice." Such being the case the notice itself is deemed to be the motion and no additional oral motion is necessary in order to give the court jurisdiction to act thereon. The effect of the court's minute order was a denial of the motion for a new trial without further order of the court, it not having been determined within the 60-day period.

■ It is now well settled that an order denying a motion for a new trial may be reviewed on an appeal from the judgment even though denied by operation of law. (*Bramble* v. *McEwan* (1940), 40 Cal.App.2d 400, 416 [104 P.2d 1054].)

Proceeding now to a consideration of the plaintiff's motion for a new trial the record discloses it to have been made on various statutory grounds including insufficiency of the evidence to justify the decision and that it is against law. Certain affidavits were filed in support of the motion. A reading of these affidavits indicates particular emphasis upon the claims that defendants Mildred and Harry failed to make an adequate and fair explanation of the transaction and therefore the evidence fails to support the judgment; that plaintiff was surprised at the time of trial by the adverse testimony of certain witnesses including Jennie B. Caldwell's attending physician who testified by deposition that he believed her to have been mentally competent and to have understood the legal consequences of her signing the deed and agreement on October 7, 1938, although plaintiff and his attorney had been led to believe such physician would testify to the contrary; that plaintiff was surprised by the provisions of the judgment concerning the furnishings of the apartment house because, subsequent to the filing of suit but prior to the trial a fire had occurred whereby some of such furnishings were destroyed and had been replaced by other articles; that by the judgment plaintiff might be liable for the payment of a gift tax to the federal government and defendants had made no offer to pay it; that he has discovered new material evidence consisting of the testimony of a nurse who attended Jennie Caldwell during the three-months' period following August 16,

1938, and that, if permitted to testify, she would state it to be her opinion that Jennie, while not insane at that time, was markedly senile, was of unsound mind though not without slight understanding and was not possessed of sufficient mental capacity to understand the nature or purpose of the deed and agreement in question.

A careful review of the affidavits and arguments supporting plaintiff's motion for a new trial, when considered in the light of the evidence as a whole, falls short of persuading us that a new trial should be had, or if one were had with the additional proposed evidence and with the element of surprise removed, that a different judgment would result. New trials on the ground of newly discovered evidence are not favored and the circumstance of the discovery of such new evidence so soon after an adverse judgment is so suspicious that courts require the very strictest showing of diligence. (*Dasso* v. *Bradbury* (1940), 39 Cal.App.2d 712, 716 [104 P.2d 128] ; *Berkowitz* v. *Kiener Co.* (1940), 37 Cal.App.2d 419, 427 [99 P.2d 578].) It must likewise appear that such evidence is new, material and not cumulative. (*Scott* v. *Flanagan* (1936), 14 Cal.App.2d 105, 112 [57 P.2d 1382].) These were all matters for determination by the trial judge and his action thereon is subject to attack only for manifest abuse of discretion. No abuse of discretion has been shown.

The judgment is affirmed.

Shinn, Acting P. J., and Wood, J., concurred.