[Civ. No. 27056.   Second Dist., Div. Two.   Oct. 10, 1963.]

Estate of BELLE SHEPARD, Deceased. LAURA HEFNER OTT et al., Petitioners and Appellants, v. HERBERT V. SHEPARD, Claimant and Respondent.

John M. Sink, Hewitt & McBride and Hewitt, McBride & Keward for Petitioners and Appellants.

J. E. Delwiche for Claimant and Respondent.

HERNDON, J.—Petitioners Laura Ott[1] and Doris Peters appeal from the judgment entered against them following a proceeding to determine heirship under sections 1080 et seq. of the Probate Code. It was therein determined that appellants were not the granddaughters and pretermitted heirs of Belle Shepard, deceased.

At the trial the evidence introduced by appellants was largely documentary, although the testimony of their aunt and uncle, if believed, would have tended to support their claims. The family history, as delineated by appellants, is both lengthy and complex; no useful purpose would be served by our imposing here the burden of a detailed recital thereof.

In substance, appellants undertook to prove the following: (1) that Belle Shepard, the decedent, during her first marriage to one Carl Baddaky, had given birth on March 23, 1901, in Hilo, Hawaii, to their mother; (2) that their mother had lived with said decedent and her second husband, Herbert Lowry, in Oroville, California, until her marriage to appellants' father; (3) that their mother had died shortly after their births in 1921; (4) that they spent the greater part of their childhood with their aunt and uncle, although contact was maintained with their grandmother, the decedent, throughout the following years; (5) that decedent's second husband died in 1944; and (6) that she subsequently married Herbert V. Shepard, to whom she was married at the time of her death, and who is the sole beneficiary under the terms of her will.

At the trial, Herbert V. Shepard, who will be referred to hereinafter as respondent, contended that although his deceased wife previously had been married to Herbert Lowry, she never had been married to Carl Baddaky, and that, in fact, she was born in New Orleans on May 1, 1898, and therefore could not possibly have been the mother of appellants' mother. At the conclusion of the trial, the court observed that "it was a close case" and that the basis for its ruling was that it "did not feel that the [appellants] had sustained the burden of proving their case by a preponderance of the evidence."

Following their receipt of notice of entry of judgment, appellants filed their notice of intention to move for a

---

[1]Petitioner Laura Ott died prior to the trial and her administrator was substituted in her place and stead. For purposes of simplicity, however, the petitioning parties will be referred to as appellants.

new trial based upon a claim of newly discovered evidence. (Other grounds were mentioned in the notice of motion, but they appear to have been abandoned.) Through the inadvertence of appellants' counsel and the court, the hearing on this motion was continued beyond the 60 days within which the court was required to rule under the express provisions of section 660 of the Code of Civil Procedure. Therefore, the motion was denied by operation of law.

■ Appellants correctly contend that the merits of a motion for a new trial denied by operation of law may be reviewed upon appeal in the same manner as if expressly denied by the court. (*Evarts* v. *Jones*, 170 Cal.App.2d 197, 206 [338 P.2d 627]; *Free* v. *Furr*, 140 Cal.App.2d 378, 386 [295 P.2d 134]; *Caldwell* v. *Caldwell*, 80 Cal.App.2d 378, 384 [182 P.2d 258]; *Bramble* v. *McEwan*, 40 Cal.App.2d 400, 416 [104 P.2d 1054]; and *Strauch* v. *Bieloh*, 16 Cal.App.2d 278, 281 [60 P.2d 582].) It is the denial of this motion that constitutes appellants' sole assignment of error herein.

This rule is manifestly a just one because if it were otherwise, a litigant would be deprived of his right to an appellate review of the proceedings in all cases in which the trial court intentionally declined to act within the authorized time or intentionally chose to deny the motion in this manner. Of course, in such instances application might be made to this court for a writ of mandate compelling the trial court to rule within the allowed time (*Clay* v. *Lagiss*, 143 Cal.App.2d 441, 451 [299 P.2d 1025]; *Free* v. *Furr, supra,* p. 385); but the latter remedy often would be impractical, and, in any event, would not constitute a review of the merits of the motion itself.

However, in cases such as the instant one in which the trial court never actually exercised its judgment in passing upon the motion, and it was the continuance suggested and agreed to by appellants' own counsel which prevented the exercise of such judgment, the application of the rule would serve to give appellants relief from their own error in a most unusual manner. Thus, when this motion was called for hearing on August 17, 1962, counsel was advised by the court that, due to the unexpected length of a trial in which it was then engaged, the motion could not then be heard, and the date of August 20, 1962, was suggested.

Although apparently neither the court nor counsel were cognizant of the fact, this suggested date was the last date upon which the court could have passed upon the motion.

Appellants' counsel stated that the indicated date would not be acceptable because he would then be out of town. He suggested August 27, 1962, and this date was thereupon fixed by the court. However, on the latter date the trial judge discovered that the time within which he could act had passed. He therefore refused to act on the motion, and, at appellants' request, he expressly stated for the record that this result had not been intended by him and that he had intended to rule upon the motion on its merits.

■ "The establishment of the period within which the denying or granting of a new trial must be exercised is a valid exercise of legislative power. It is mandatory and jurisdictional, and may not be extended by stipulation." (36 Cal.Jur.2d, New Trial, § 159, p. 367; See also, *Muller* v. *Municipal Court*, 176 Cal.App.2d 156, 161 [1 Cal.Rptr. 207].) Since the rule prescribes a limit which is jurisdictional in nature, relief from this form of error may not be granted by the trial court either under the provisions of section 473 of the Code of Civil Procedure or by means of a *nunc pro tunc* order. (*Whitley* v. *Superior Court*, 18 Cal.2d 75, 80 [113 P.2d 449]; *Kraft* v. *Lampton*, 13 Cal.App.2d 596, 597-598 [57 P.2d 171]; see also, *People* v. *Black*, 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915].)

■ It has been stated that "[i]t is the duty of the party to be present and see that his motion for new trial is set for hearing within the statutory time. If it has been inadvertently continued by the court to a date too late under the statute the party should move the court to advance the matter on the calendar. When he is guilty of lack of diligence in the prosecution and presentation of his motion, he cannot complain of the court's inadvertence." (36 Cal.Jur.2d, New Trial, § 159, *supra*, pp. 368-369; also, *Muller* v. *Municipal Court, supra*, p. 162; *Witherill* v. *Brehm*, 74 Cal.App. 286, 299-300 [240 P. 529].)

The anomalous situation resulting from the simultaneous application of the two rules last stated is perhaps best exemplified in *Jensen* v. *Union Paving Co.*, 103 Cal.App.2d 164 [229 P.2d 121]. There the trial court, apparently through inadvertence, failed to pass on a motion for a new trial within the 60-day period, but, recognizing the merits of the motion, purported to enter an order under the provisions of section 662 of the Code of Civil Procedure. Upon appeal this order was held ineffective and void; the decision, however, states at page 171 as follows:

"The trial court recognized that errors had been committed in the findings and tried to correct these errors, but it acted too late. Under the circumstances it must be held that it was an *abuse of discretion* to deny the motion for a new trial by operation of law." (Italics added.) Thus the party moving for the new trial was able to obtain relief from his own failure to obtain a ruling on his motion within the statutory period by the process of shifting to the trial court the responsibility for the failure to rule and by engaging in the fiction that the court intentionally had exercised its discretion in causing the new trial to be denied by operation of law.

Appellants in the instant case request this court to go one step further; they ask us to treat the order as though it had resulted from a denial by the court, rather than from their own lack of diligence. They urge that in reviewing the order we should accept the court's statement that the denial *actually* was unintentional and therefore that we should determine the propriety of the denial as a matter of first instance rather than as a question whether the fictitious exercise of the trial court's discretion amounted to an abuse of that discretion.

This we are not disposed to do. Indeed if the rule permitting review in instances of denials by operation of law were not so firmly established, we would entertain grave doubts of its applicability in this case where, as is emphasized by their own contentions, it was appellants' mistake which operated so directly to create the situation which now confronts them. But since the rule is so well established, we feel bound to follow it.

■ As stated in *Strauch* v. *Bieloh, supra,* 16 Cal.App.2d 278, 281: "The granting or denying of a motion for new trial even on the ground of newly discovered evidence is largely in the discretion of the trial judge. His determination of the motion for new trial will not be disturbed on appeal except upon manifest abuse of discretion, which does not appear in the present case. [Citation.]

"This rule with respect to an abuse of discretion, applies with equal force, when the motion for new trial is automatically denied under the provisions of section 660 of the Code of Civil Procedure for failure to affirmatively pass upon the motion within sixty days after filing the notice of intention to move for a new trial. That section provides that the effect of a failure to pass upon the motion within the time

allowed by law 'shall be a denial of the motion.' *The discretion of the trial judge must be deemed to have been exercised in permitting the motion to be denied by lapse of time exactly the same as though that discretion were used in affirmatively passing on the motion.*'' (Italics added.)

"Coupled with this well-settled principal is the policy of the law that the claim of newly discovered evidence as a ground for a new trial is uniformly looked on by the courts with distrust and disfavor. It is said that public policy requires a litigant to exhaust every reasonable effort to produce at his trial all existing evidence in his behalf.'' (*Akopiantz* v. *Board of Medical Examiners,* 190 Cal.App.2d 81, 93 [11 Cal.Rptr. 810].)

In the instant case, the newly discovered ''evidence proffered as a ground for the granting of a new trial consists of the anticipated testimony of a Mrs. Ruby Holzer, an alleged niece of the deceased, and a Mrs. Olivia Canale, allegedly the daughter of Carl Baddaky by a marriage prior to his marriage to deceased. If these witnesses were to testify in the manner indicated by their affidavits, and if such testimony were accepted as true by the trial court, it may be conceded that such evidence might well produce a different result upon a retrial. This does not, however, determine whether appellants have shown that this newly discovered evidence ''could not, with reasonable diligence, have [been] discovered and produced at the trial'' as required by section 657, subdivision 4, of the Code of Civil Procedure.

The affidavit of John M. Sink, cocounsel for appellants, introduced in support of their motion, indicates that Mrs. Canale was located by means of advertisements run in newspapers in the Hawaiian Islands after the trial and that Mrs. Holzer was located by means of a telegram sent to her brother after the trial to his address in Sacramento. The identity of the brother had been known to Mr. Sink's cocounsel prior to the trial, but allegedly communications addressed to him had elicited no response. Appellant Laura Ott (now deceased) also had advised cocounsel that she had an aunt residing in San Francisco who might be of assistance, but he had been unable to locate her because he was not given the correct name. Mr. Sink's affidavit states that he does not know whether or not appellant Doris Peters remembered Ruby Holzer (the aunt referred to by Mrs. Ott) or to what extent they had been in touch with each other. Appellant Peters was in Germany with her husband during the trial

and no testimony from her was offered either by way of deposition or otherwise.

■ It long has been the rule in California that where the existence of a witness, and the materiality of his testimony, is known prior to a trial, a failure to seek a continuance in order to determine his whereabouts and to obtain his testimony prevents a subsequent successful motion for a new trial being based upon his testimony. As stated in *Scanlan* v. *San Francisco etc. Ry. Co.*, 128 Cal. 586, 589 [61 P. 271]:

"Donaldson, who made the survey and field-notes in question, had left defendant's employ, and his whereabouts had been discovered too late to produce him at the hearing of the case. A new trial was sought, and Donaldson's testimony was urged as the newly discovered evidence, but it appears from the affidavits that this evidence was in no sense newly discovered. Defendant's engineers had knowledge through their attorney of the materiality of Donaldson's testimony before the trial, and took certain steps to find him and procure his attendance. At the time of the trial they had not discovered him. Knowing of the importance of his testimony, defendant *should have moved for a continuance, and, failing to do so, it must be held that it entered upon the trial at its peril.*" (Italics added.)

Similarly in *Broads* v. *Mead,* 159 Cal. 765, 768 [116 P. 46, Ann.Cas. 1912C 1125], the court stated: "On motion for new trial defendants filed an affidavit showing that Bergman, whose whereabouts defendants had been previously unable to learn, had been discovered since the trial and would testify that the oral agreement had been made as claimed, and that Mrs. Broads had been informed of it before she bought the lease of Bergman. The affidavit shows that defendants, prior to the trial, knew that Bergman would so testify. Hence, it was not strictly newly discovered evidence. It is not shown or claimed that any application was made to postpone the trial so as to give an opportunity to discover Bergman and secure his attendance or deposition. A new trial was therefore properly refused [citation]." (See also *Learned* v. *Peninsula R. T. Co.*, 49 Cal.App. 436, 440 [193 P. 591], and *Nuttman* v. *Chais*, 101 Cal.App.2d 476, 480 [225 P.2d 660].)

■ With respect to the witness who was located by means of advertisements published after the trial, the following language from *Adams* v. *Schmoker*, 54 Cal.App.2d 719, 722 [129 P.2d 961], is apposite:

"A motion for a new trial was not passed upon by the trial

judge within the time allowed, with a resulting denial by operation of law. The appellant contends that a new trial should have been granted because the affidavits presented not only show due diligence but disclose newly discovered evidence which was material and which indicates that the result would be different on a new trial. It may first be observed that the showing of due diligence is not very strong.... With respect to the other witnesses now sought to be produced, it appears that the appellant discovered them through advertisements in newspapers after the trial was concluded. No reason is given for not having earlier used this method which later proved effective. (*Putnam* v. *Pickwick Stages*, 98 Cal.App.268 [276 P. 1055].)''

In the cited case of *Putnam* v. *Pickwick Stages, supra,* pp. 274-275, it was stated: ''With respect to the contention of appellant that the newly discovered evidence could not with reasonable diligence have been produced at the time of the trial, from the affidavits presented in support thereof it is shown that the newly discovered evidence consists of the testimony of G. C. Bourquin and P. S. Titus, both of whom were passengers on the stage at the time of the accident; that their whereabouts were discovered by advertising in newspapers and although the said discovery occurred after the trial, the showing clearly indicates that the advertisements also occurred after the trial. ... Affiant undertakes to justify his failure to advertise sooner for the reason that he first wanted to confer with Harris, the driver. He admits that he located Harris on January 4, 1927, but did not confer with him until January 25, 1927, about three weeks later and even then he neither employed the method available for locating the passengers that later proved to be effective, nor did he ask for a continuance or postponement of the trial which was set for a week later, but chose to go to trial without them and then did actually locate them within a very few days after the trial. Knowing, as it is admitted it did, of the importance of the testimony, defendant *should have moved for a continuance, and, failing to do so, it must be held that it entered upon the trial at its peril.* [Citations.]'' (Italics added.)

In his affidavit filed in the instant case, Mr. Sink states: ''Prior to this trial, it did not seem worthwhile to run newspaper ads in the Hawaiian Islands, for a number of reasons. At that time, it appeared to me that names such as Carl Baddaky and Gusmao represented people who were probably transients and unlikely to be remembered after such a long period of time. Perhaps more important, the clear cutoff be-

tween the Hawaiian Islands and California (in the life of Belle Shepard) made it unlikely that any witnesses still living in the Hawaiian Islands could positively link their recollections with a woman who lived most of her life in California.

"When this case was tried, petitioners failed to obtain judgment for the simple reason that the evidence appeared to the Court equally balanced, petitioners having the burden of proof. *Since it has always been our conviction that our cause is right, it was imperative for us to find other methods to prove the facts, using every feasible approach to find evidence which must exist, whether or not it seemed very probable.* This evidence has come to light in ways not foreseeable before the trial." (Italics added.)

The last quoted sentence, of course, is inaccurate, for the "newly discovered evidence" now offered came to light either in ways actually, but ineffectually, pursued before trial or in ways actually considered before trial, but discarded as not worthy of pursuit. However, the dedicated attitude indicated by the italicized portion of Mr. Sink's affidavit (apparently developed only *after the trial*) was a proper one that should have existed *prior to the trial.* As stated in *Smith* v. *Hale,* 3 Cal.App.2d 277, 281 [39 P.2d 445]:

"The trial of an action is a formal and final proceeding; the welfare of society served by the court demands that the parties to litigation have convenient opportunity to fully present the evidence pertinent to their conflicting claims and *then that such litigation be expeditiously terminated. To that end it exacts of the parties a high degree of diligence in discovering and presenting at the trial all the evidence upon which the cause is to be determined.*" (Italics added.)

Indeed, almost the sole factual assertion upon which a claim of newly discovered evidence reasonably could be founded is the following from Mr. Sink's affidavit: "Three items of evidence were introduced at the trial by respondent which have helped to change the situation. These were two photographs and a clipping. One photograph showed two men and a woman sitting on some ruins, and was purportedly taken in 1913. The other photograph showed a house with a Japanese maid standing on the porch and a woman seated in the foreground. These were taken from decedent's effects, and her last husband was unable to identify them. The third item was a newspaper clipping containing an obituary of Mr.

Lowry. All of these three items were produced by Mr. Delwiche [respondent's attorney]. To the best of my recollection, *the first time I saw these items before trial was the evening before trial when Mr. Delwiche came to my office and showed me these and many other items from his file.* The full significance of the two photographs and the clipping was not apparent then, or even at the trial. The clipping indirectly led to a new witness. The two photographs are of tremendous importance in that subsequent discovered witnesses have been able, by these photographs, to establish that Belle Baddaky of Hilo, Hawaii, was the same person as decedent.'' (Italics added.)

However, as indicated, although appellants' counsel did see this newspaper clipping prior to trial, they failed to seek a continuance to enable them to investigate any leads that might have been indicated therein. Even more importantly, it is conceded that at no time during the pendency of this proceeding did appellants take the deposition of respondent, the husband of the deceased, who had possession of these items. Neither did they avail themselves of any discovery proceedings whatsoever which almost certainly would have lead to their earlier discovery. Certainly such a total lack of diligence prior to the trial effectively prevents reliance upon evidence allegedly derived from the newspaper clipping and pictures discovered immediately before trial; particularly where no continuance was sought even when the existence of these items became known.

It is clear that appellants elected to proceed to trial at their peril on the evidence then available to them. They cannot by the exercise of any amount of diligence thereafter entitle themselves to a second trial. Although the comments of the trial judge do not so indicate, appellants suggest that if their motion for a new trial had been properly prosecuted, the ruling thereon would have been favorable to them. However, we need not decide whether the timely granting of a new trial under the circumstances here disclosed would have constituted an abuse of discretion in order to hold that under the conditions actually existent the *denial* of the motion by operation of law did not constitute reversible error.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 4, 1963.