[Civ. No. 28655.   Second Dist., Div. One.   May 10, 1965.]

LESLIE KYLE, a Minor, etc., et al., Plaintiffs and Appellants, v. RALPH W. STONE et al., Defendants and Respondents.

Thomas W. LeSage, Robert V. Lauderdale and Michael T. LeSage for Plaintiffs and Appellants.

Waters & McCluskey, Gerald E. McCluskey and Henry F. Walker for Defendants and Respondents.

LILLIE, J.—Plaintiffs, Leslie, aged 12, and his father, John Kyle, sued Mr. and .Mrs. Stone for damages for injuries suffered by Leslie; judgment on a jury verdict was entered against them. They appeal from the judgment and verdict. While the judgment does not appear in the record, respondents concede that the same was entered in their favor based on a jury verdict.

In early 1957, Mr. and Mrs. Stone moved onto the premises as tenants, and in December 1957 became owners. Along the south side was a driveway extending to the rear covered with a composition substance; during the Stones' occupancy it had never been used by automobiles. A wire fence ran across the front of the premises. Another driveway ran to the house on the north side. Between the house and the back yard area was a patio surrounded by a concrete block wall approximate 5½ or 6 feet high which had an opening into the south driveway separating two sections of the wall.

The wall was on the premises when the Stones bought it

from the Snyders; they had no conversation with Mr. Snyder about the wall. It was not known before the accident if there were reinforcing rods in the wall since there were no cracks, breaks or other means of looking into it. The wall had a cement cap and appeared to be straight up and down. It was not affixed to the house itself; there was a slight distance between the edge of the wall and the house which had been there at all times during defendants' occupancy; they knew it existed, and there is no evidence that this was not the manner in which the wall originally was built. Defendants had never painted, repaired or changed the wall. No part of it ever fell or hurt anyone before the accident. Defendants testified they had never had any knowledge or notice of any weakness or danger in the wall; and Mrs. Stone said she had no reason to, and did not, tell her children or anyone else to be careful. She denied that she ever made any statement to anyone that the wall was weak or that she knew it to be weak; Mr. Stone testified that she had never made any such admissions in his presence. He stated that no restrictions had been placed on his children playing about the premises.

Defendants' three children, Mike, 10, Patricia, 8, and Chris, 6, had received a gocart for Christmas. They often played with it on the south driveway. On March 16, 1961, Chris, the 6 year old, was playing with the gocart in the south driveway with neighborhood boys, Bobby, 12, Al, 13, Raymond, Dave and John, all older than Chris. Leslie, then 12, was standing next door watching. He testified that Chris asked him if he wanted a ride; he replied, "Well, okay," went over and took a ride. He had never before played on defendants' premises. Leslie said the gocart had just passed him on its way to the front about 4 feet away and he was standing with his back to the wall when someone yelled, "Look out," he turned around, saw the wall falling, tried to catch it with his hands down in a basket shape and was hit.

Appellants contend there is no substantial evidence to support instructions given "at the request of defendants" on contributory negligence and the duty owed to trespassers.

The reporter's transcript contains twenty pages of instructions given by the trial court, but there is no indication therein, or in any other part of the record, as to who requested any of them. ▮▮ Inasmuch as the record fails to show who requested the instructions now challenged by appellants, it must be presumed that they were given at appellants' own

request. (*Lynch* v. *Birdwell,* 44 Cal.2d 839, 847 [285 P.2d 919] ; *Deevy* v. *Tassi,* 21 Cal.2d 109, 124 [130 P.2d 389].) They are now in no position to complain. ■ However, the evidence is sufficient to support the instructions and defendants were entitled to have the jury fully instructed on all legal principles pertaining to the case.

At all times during the trial plaintiffs contended that the wall was "wobbly," "weak," "defective," broken and leaning, offered evidence on the condition of the wall, and argued to the jury that it obviously was "dangerous." The record shows the conduct of the children playing with the gocart in defendants' driveway near this "obviously dangerous" wall. They were taking rides in the gocart; when they were not in the cart, they were standing near the wall watching the gocart being driven up and down the driveway, and stepping back against the wall or climbing up on it out of the way of the gocart as it passed. The wall was constructed of cement blocks approximately 6 inches in diameter, 4 inches high and 16 inches long; the blocks in one section became dislodged and fell. Whatever caused the blocks to dislodge, caused the same to fall toward the driveway. While Leslie testified that he was standing with his back to the wall when someone yelled, "Look out," and he turned, saw the wall falling and tried to catch it, the testimony of his witnesses is in conflict concerning whether, before the blocks dislodged, he was facing the wall, had leaned against it, or had climbed up on the wall to watch the gocart. Leslie testified he didn't think he touched the wall, but he said in his deposition that he was standing back by the wall as the cart went by, and "I think I touched it (wall)." Al (plaintiffs' witness) testified he saw Leslie and Bobby leaning against the wall; then he said that Leslie did not touch it. However, in his deposition Al said, "I saw Leslie Kyle climb upon the wall to watch the gocart"; at the trial Al admitted he said this and testified, "That is what I thought I saw"; he then explained, "Leslie Kyle . . . had a habit of sitting someplace high and watching, you know, things go by and stuff . . ." Bobby testified he saw Leslie facing the wall with his hands up above his head. It is clear that Leslie was facing the wall when struck for he fractured the two fingers of the right hand when he tried to "catch" the falling wall, and injured his right ankle.

Whether Leslie climbed on the "obviously dangerous" wall, pulling it toward him, or jumped on it to get out of the way of the gocart, and whether this conduct proximately caused the

blocks to dislodge and ultimately fall, were questions of fact for the jury on the issue of his negligence. Considering the entire evidence in the light of good commonsense, the inference is reasonable that the blocks dislodged because of force and pressure applied to the wall by a pulling motion toward the driveway made by Leslie either jumping on the wall pulling himself out of the way of the cart, or climbing the wall and sitting on it out of the way watching the cart go by.

On the issue whether Leslie was a trespasser, he said he was invited to defendants' premises by Chris Stone who said to him, ''Do you want a ride?'' While Al in reply to another question, volunteered, among other things, ''. . . I think it was Chris that asked him (Leslie) to come over . . .'', a reading of his testimony leads us to the same conclusion as that of the trial judge who said, in denying a motion for mistrial when Al mentioned that Mrs. Stone had insurance: ''. . . I consider the matter is unimportant coming from this particular witness, because I—this witness was such a poor witness that I don't think the jury is going to pay much attention to anything he (Al) says. . . .'' To take Leslie out of the category of a trespasser and make him a licensee, plaintiffs had to offer some proof of an invitation; they did so, not by showing that either Mr. and Mrs. Stone invited Leslie to come over and play, but that 6-year-old Chris did so. Leslie's testimony in this regard is suspect. While he very clearly could remember Chris inviting him, he could not remember any conversation with any of the other boys; he could not remember talking to Al, his good friend, or to Ray, Patricia or Bobby. All Leslie remembers is that Chris asked him to come over. Chris, 6, was too young at the time and did not testify at the trial. Considering that it was to Leslie's best interest to say that he was invited by a Stone, Leslie's failure to remember conversations with any of the other boys, that it would hardly be to the advantage of 6-year-old Chris to invite Leslie, 12, to join them since it would only mean giving up one more ride to another older boy, and that the children had played with the gocart there on at least ten other occasions and Chris had not before invited Leslie, the jury could well reject Leslie's testimony concerning the invitation as not credible, even though it was not contradicted by other witnesses. (*Odenthal* v. *Lee,* 113 Cal.App.2d 666, 669 [248 P.2d 937].) ▮▮ ''It is elementary that the jury, in passing upon the credibility of a witness, is entitled to consider his interest in the result of the case, his motive, and the manner in which he testifies (*Hamilton* v.

*Abadjian,* 30 Cal.2d 49, 53 [179 P.2d 804]; *Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868]), and the jury may disbelieve the testimony of the witness even though it is uncontradicted if there is any rational ground for doing so. (*Hicks* v. *Reis, supra,* pp. 659-660; *Blank* v. *Coffin, supra,* p. 461.)'' (*Tidlund* v. *Seven Up Bottling Co.,* 154 Cal.App.2d 663, 666-667 [316 P.2d 656].) The jury was free to reject this testimony of Leslie; it could as well have believed that he invited himself over to play or the older boys nearer his age invited him, as to believe that the 6 year old did so.

Appellants' claim that the trial court erred in excluding certain of Al's testimony is without merit. After he testified that several times prior to the accident he had been near defendants' wall and he and Mike played ''Army back there,'' counsel for plaintiffs on direct examination asked him: ''Did Mike Stone at that time say anything about the wall?'' and ''Did you have any conversation with Mike about whether you should be near the wall or not?'' The trial court sustained objections to the questions as calling for hearsay. Plaintiffs offered to prove by Al that Mike told Al not to go near the fence because it was weak and wobbly and that his mother and father knew about this. Relying upon *Dussault* v. *Condon,* 170 Cal.App.2d 693 [339 P.2d 896]; *Hickman* v. *Arons,* 187 Cal.App.2d 167 [9 Cal.Rptr. 379] and *Smith* v. *Whittier,* 95 Cal. 279 [30 P. 529], appellants argue that this constituted circumstantial evidence that defendants knew the wall was weak. *Hickman* v. *Arons, supra,* and *Smith* v. *Whittier, supra,* hold that a warning of danger or of a condition given directly to or read by the defendant is admissible to show that he had knowledge of the same. This is not the situation here. Nor does *Dussault* v. *Condon, supra,* apply. Therein, on the issue of the reasonableness of defendant's act in arresting plaintiffs, the court permitted defendant, a police officer, to testify to what he heard an informer state concerning the facts upon which he made the arrest. What defendant there testified to was something that was said directly to him.

In the case at bar neither Mr. nor Mrs. Stone was present at the time of the purported conversation between Al and Mike, and neither heard such conversation. The plaintiffs sought to prove the fact of defendants' knowledge by a statement made by a third person (Mike) to the witness (Al). They made no attempt to prove knowledge by any statement made by, to, or in the presence of either defendant. Mike was defendants' 10-year-old son, 13 at the time of trial; he was not

a party to the action, and not present at the time of the accident. But he was in the courtroom under plaintiffs' subpoena, yet they did not call him as a witness to testify concerning what, if anything, his mother or father had told him.

What the witness heard a third person say concerning what either defendant told him is pure hearsay; the objections to the questions were properly sustained. (*People* v. *Wells,* 100 Cal. 459, 461 [34 P. 1078]; *Fireman's Fund Ins. Co.* v. *Romero,* 128 Cal.App.2d 331, 336 [275 P.2d 83]; *Goodrich* v. *Tulare Ice Co.,* 140 Cal.App.2d 224, 227 [294 P.2d 1037].)

Appellants' final contention is that the trial court abused its discretion in denying plaintiffs' motion for a new trial; no error appearing in the trial, the only ground for the motion not already discussed is newly discovered evidence consisting of the affidavit of one Paulson. It states that he was a neighbor of defendants until he moved to Wisconsin in November 1962; prior to March 16, 1961, he was in defendants' home at which time Mrs. Stone said to him that she would have to "tear that wall down before it falls down," and knew the wall was weak; in July 1963 he received a letter from plaintiffs' counsel asking whether he had information that the Stones knew that the wall was weak; he did not reply because at the time he did not wish to become a witness; and he now regrets the decision and is willing to testify to the above facts.

No affidavit was filed by defendants, but we know of no requirement that a counteraffidavit must be filed for the trial court to exercise its discretion, rule on and deny a motion for a new trial.

The decision on a motion for a new trial rests largely in the sound discretion of the trial court, but the rule is more applicable to a motion made on the ground of newly discovered evidence. Ordinarily newly discovered evidence is looked upon with suspicion and disfavor. (*Estate of Cover,* 188 Cal. 133, 139 [204 P. 583]; *Arnold* v. *Skaggs,* 35 Cal. 684; *Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 789 [117 P.2d 850].) The trial court's determination "will not be disturbed unless an abuse of discretion is clearly shown." (*Maloof* v. *Maloof,* 175 Cal. 571, 574 [166 P. 330]; *Stanley* v. *Columbia Broadcasting System, Inc.,* 35 Cal.2d 653, 668 [221 P.2d 73, 23 A.L.R.2d 216]; *People* v. *Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].)

The proffered testimony consisted of an asserted oral admission made by a defendant and is cumulative in nature—similar to testimnoy introduced by plaintiffs at the trial. They

produced three witnesses (Bobby, Dennis Kyle and John Kyle) who testified that Mrs. Stone made oral admissions to them that the wall was weak. ██ ". . . [A]n order denying a new trial will not be disturbed if the record shows any basis upon which it may be upheld, and where the motion is based upon the ground of newly discovered evidence it must appear that the evidence is not cumulative." (*Landrum* v. *Severin*, 37 Cal.2d 24, 28 [230 P.2d 337] ; *Smith* v. *Royer*, 181 Cal. 165 [183 P. 660] ; *Scott* v. *Flanagan*, 14 Cal.App.2d 105 [57 P.2d 1382] ; *Furze* v. *Wright*, 6 Cal.App.2d 409, 415 [44 P.2d 417].) Nor does it appear from the affidavit that the case should or would have resulted differently had the evidence been received. (*Shivers* v. *Palmer*, 59 Cal.App.2d 572, 582 [139 P.2d 952].) ██ In addition, plaintiffs failed to show due and proper diligence in their efforts to procure the proffered testimony prior to trial (Code Civ. Proc., § 657, subd. 4) ; whether such a showing was made is a discretionary matter for the trial judge. (*Singh* v. *Frye*, 177 Cal.App.2d 590, 594 [2 Cal.Rptr. 372].) On its face Paulson's affidavit shows that plaintiffs and their counsel knew before trial of his existence, wrote to him concerning whether he had knowledge of any admission made by Mrs. Stone, and knew that Paulson might have been able to testify to something pertaining to the issues in the cause. ██ Yet, when Paulson did not reply, plaintiffs simply made no further effort to investigate and procure the evidence. Paulson's failure to reply to counsel's letter establishes no justification for plaintiffs' failure to attempt further to secure his testimony. (*Estate of Cover*, 188 Cal. 133, 149 [204 P. 583].) ██ "The party moving for a new trial on the ground of newly discovered evidence must show by his own affidavit that he did not know of the evidence and could not by diligence have obtained it." (*Bennett* v. *Pacific Greyhound Lines*, 147 Cal.App.2d 74, 75 [304 P.2d 721].) We find no abuse of discretion in the trial court's denial of the motion.

The purported appeal from the "verdict" is dismissed. (*Neyens* v. *Sellnow*, 202 Cal.App.2d 745, 746 [21 Cal.Rptr. 151].) The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 7, 1965. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.