[Civ. No. 25712. First Dist., Div. Four. Jan. 9, 1970.]

ARLENE ANDERSEN, Plaintiff and Appellant, v.
RUTH HOWLAND, Defendant and Respondent.

COUNSEL

James G. Quinn, Jr., Vivian Quinn and Granville T. Burke for Plaintiff and Appellant.

Barfield, Barfield & Dryden, Barfield, Barfield, Dryden & Ruane and Cyril Viadro for Defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—Arlene Andersen appeals from a judgment entered after a jury returned a $2,800 verdict in this action for personal injuries sustained when plaintiff's car was struck from the rear by a car driven by defendant Ruth Howland. ■■■ The sole contention on appeal is that the trial court erred in denying a motion for new trial, limited to the issue of damages, on the basis of newly discovered evidence.

The physician who treated appellant, William S. T. Jackson, M.D., testified that appellant had received a typical "whiplash" injury of the neck, evidenced by pain, limitation of mobility, muscle spasm, and an apparently permanent subluxation (slipping displacement) of certain cervical vertebrae. Dr. Jackson predicted that pain and some disability would be permanent. He did not testify that he had identified any fracture. A radiologist, William J. Kieferdorf, M.D., demonstrated from several X-ray pictures the vertebral subluxation testified to by Dr. Jackson; he also found limitation of mobility, which he attributed to "pain or scarring." An orthopedic surgeon called by the defense testified that he had examined appellant and found no limitation of mobility, no vertebral subluxation, and no evidence of any fracture.

After the jury had returned its verdict appellant moved for a new trial on a variety of grounds; newly discovered evidence was the only ground pressed at the hearing. The motion was supported by declarations made by her attorneys and by Dr. Jackson relating that Dr. Kieferdorf had discovered, in court just before he testified, evidence of a previously undiagnosed fracture of a cervical vertebra. An X-ray picture which showed the fracture had been introduced in evidence by the defense; nevertheless, Dr. Kieferdorf's discovery was not made known to the jury. Appellant's excuse is that because Dr. Kieferdorf had not treated appellant he was not qualified to explain the significance of the fracture, or relate it to the accident or to appellant's disability. Dr. Jackson had by then departed for Honolulu and could not immediately be brought back to court to testify concerning the significance of the discovery. Upon his return Dr. Jackson obtained new X-ray pictures which confirmed the existence of the fracture

detected by Dr. Kieferdorf. These further X-rays showed, when compared with the earlier pictures, "a progressive collapse of the Pillar or lateral mass of [the affected vertebra] during the interval from November 9, 1963 to December 13, 1967 . . . arthritis in the adjacent facets is anticipated with time, which will cause future disabling complications." This opinion, formed after trial, is the "newly-discovered evidence" which was the basis of the motion for new trial.

Counsel for respondent did not dispute the facts related in the declarations. Opposition to the motion was based only on the contention that appellant was not diligent in that she did not, upon learning from Dr. Kieferdorf that there was X-ray evidence of a vertebral fracture, ask for a continuance to get Dr. Jackson's further testimony upon his return. A subsidiary contention is that appellant had not been reasonably diligent in the production of the evidence at trial. The court declared that there was no lack of diligence on the part of counsel for appellant, but nevertheless denied the motion for new trial "on the basis that the change of the professional opinion after the date of trial is not a ground for new trial."

▉ Respondent first attempts to defend the order denying new trial as a proper exercise of discretion where appellant failed to ask for a continuance upon learning from Dr. Kieferdorf that a fracture had been sustained (citing *Estate of Shepard* (1963) 221 Cal.App.2d 70, 77 [34 Cal. Rptr. 212]). It is true that where a party knows of an important witness and the materiality of his testimony but is unable to produce him at the time of trial, due diligence normally requires the party to move for a continuance; failure to seek a continuance justifies denial of a subsequent new trial based on the discovery of new evidence. (*Scanlan* v. *San Francisco etc. Ry. Co.* (1900) 128 Cal. 586, 589 [61 P. 271]; *Estate of Shepard, supra,* 221 Cal.App.2d 70, 77; *Griffeth* v. *Fehsel* (1943) 61 Cal.App.2d 600, 607 [143 P.2d 522]; *Bradbury Estate Co.* v. *Carroll* (1929) 98 Cal. App. 145, 154 [276 P. 394]; see also 3 Witkin, Cal. Procedure (1954) p. 2058.) But appellant contends that Dr. Kieferdorf's discovery did not enable her to show the nature or materiality of Dr. Jackson's possible further testimony, and that she would therefore have been unable to get a continuance. If that is so, it was not a lack of due diligence to fail to ask for a continuance. (*MacKenzie* v. *Angle* (1947) 82 Cal.App.2d 254, 258 [186 P.2d 30]; Code Civ. Proc., § 595.4.)

It may well be that in the circumstances we have reviewed it would not have been an abuse of discretion for the trial court to determine that appellant had not shown due diligence. But where Dr. Kieferdorf's discovery came so late in the trial and Dr. Jackson had departed from the state and was unavailable for consultation, the circumstances do not permit us to overturn the trial court's determination that appellant did use due

diligence. The question of due diligence is peculiarly one for the trial judge (Code Civ. Proc., § 657, subd. 4). He can better appraise the events and atmosphere of the trial for that purpose than can we. The motion for new trial was denied not in the exercise of the trial court's discretion but on a proposition of law. ■ The trial judge expressly declared his determination that there was no lack of diligence and forthwith denied a new trial, stating that he felt so compelled because "the change of the professional opinion after the date of trial is not a ground for new trial." The doctrine that the court's remarks will not be used to impeach the order (*Yarrow* v. *State of California* (1960) 53 Cal.2d 427, 437 [2 Cal.Rptr. 137, 348 P.2d 687]) does not insulate from review the trial court's determination of that question of law.

Respondent also contends, in support of the theory adopted by the trial court, that the evidence of fracture was not "newly discovered" within the meaning of Code of Civil Procedure section 657, subdivision 4. (See *People* v. *Williams* (1962) 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].) But the new evidence was not the discovery of the fracture by Dr. Kieferdorf; it was the later-developed opinion of Dr. Jackson that progressive collapse of bony structure had ensued, and that further painful and disabling arthritis would be suffered. The opinion of a qualified expert is itself evidence (Evid. Code, § 140), though it be based partly on other evidence (such as X-ray pictures) already put before the jury. The new opinion of Dr. Jackson was not formed until after he had returned, consulted Dr. Kieferdorf, and conducted further X-ray studies. ■ The new opinion was highly material evidence. It supported and explained appellant's otherwise largely subjective complaints; more important, it indicated for the first time that future disability would probably be progressive. It appears to us likely that the jury would have returned a larger verdict if the evidence had been presented. The evidence did not exist at the time of trial. It was "newly discovered" when it was communicated to counsel after Dr. Jackson had completed his reexamination of his patient. ■ Therefore the order denying new trial is not supported by the reason given by the court.

Respondent suggests that reversal for purposes of a new trial "would have devastating effects upon the orderly administration of justice, for it would open the door to similar motions in any case in which a physician could be prevailed upon to go further after a low verdict than he had originally been prepared to go." But although Dr. Jackson's new opinion was newly discovered evidence, it does not follow that the trial court would have been compelled to grant a new trial. All the factors of diligence and materiality which normally apply are to be weighed by the judge in making his discretionary determination of the motion. ■ Our holding

is only that a newly formed expert opinion is not as a matter of law insufficient to support an order granting a new trial.

We recognize that there may have been available a discretionary basis of denying the motion for new trial that was not considered, such as that a verdict more favorable to appellant was not likely (see *People* v. *Williams, supra,* 57 Cal.2d 263). But the trial court's power to grant a new trial expired no later than 60 days after appellant filed notice of intention to move for new trial (Code Civ. Proc., § 660). Therefore we are unable to vacate the judgment and the order denying new trial in order to permit the trial court to reconsider the motion and rule upon it in a proper exercise of its discretion as to issues not previously reached (*cf., Mercer* v. *Perez* (1968) 68 Cal.2d 104, 123 [65 Cal.Rptr. 315, 436 P.2d 315]; *Lippold* v. *Hart* (1969) 274 Cal.App.2d 24, 27 [78 Cal.Rptr. 833]).

The judgment is reversed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied on February 6, 1970, and the opinion and judgment were modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied April 1, 1970.