[Civ. No. 16641.   First Dist., Div. One.   June 6, 1956.]

BEATRICE SILVER, Appellant, v. SYLVAN
SCHWARTZ et al., Respondents.

Sullivan, Roche, Johnson & Farraher for Appellant.

Rhein, Dienstag & Levin, Edward Levin and Jay Jackson, Jr., for Respondents.

AGEE, J. pro tem.*—The plaintiff, Beatrice Silver, brought this action against her brother-in-law, Sylvan Schwartz, and her son, Robert Elliot, individually and as copartners, for the sum of $25,500, plus interest, which sum she claims was loaned by her to the partnership. Elliot allowed judgment to go against him by default and he is not a party to this appeal. The trial court, sitting without a jury, rendered judgment in favor of Schwartz and the partnership, and plaintiff has appealed therefrom.

Schwartz proposed to Mrs. Silver that she put up the money necessary to obtain a long term lease on a certain corner lot in Colma, California, and construct a gasoline service station thereon. They agreed that Elliot would become an equal partner with Schwartz in the venture. Schwartz was to arrange for and oversee the construction work and start the

*Assigned by Chairman of Judicial Council.

business going. Then Elliot was to quit his job in Los Angeles and become the active manager of the station, with a drawing account of $350 or $400 per month. As it turned out, Elliot never did work at the station.

Schwartz secured a 15-year lease on the corner property. Between November 4, 1949, and April 16, 1950, Mrs. Silver put up a total of $25,500. Schwartz supervised the construction work and, after completion, operated the station himself until October, 1951. Then, on behalf of the partnership, he leased the station for seven years at a guaranteed minimum rental of $1,400 per month.

This action was tried in June, 1954. By that time, each of the partners had received from the profits of the business a total sum of approximately $18,700. Rentals accruing since the litigation began had been collected by the attorneys and were being held by them. The record does not disclose the amount of this undistributed income. The payments to Elliot actually had been received by Mrs. Silver, who held his power of attorney. However, Mrs. Silver has never received any money for herself, despite the testimony of herself and Elliot that the agreement was that the $25,500 was to be paid back to her out of the profits of the business. Neither she nor Elliot offered any explanation of why none of the profits actually distributed to the partners, which totaled over $37,400, had ever been paid to her. In her capacity as attorney-in-fact for Elliot, she received his monthly payments and thus had actual knowledge at all times of what the profits were.

The only issue before the trial court was whether Mrs. Silver's money was a loan to the partnership, as she contended, or payment for a half interest in the business for her son, as Schwartz contended. Schwartz testified that his agreement with Mrs. Silver was that he was to get his half interest in return for his services and "know-how." In reply to a question as to what consideration was furnished by him, he stated: "My know-how in the business, my efforts of securing one of the finest, most valuable land leases in the gasoline business, which has been acknowledged by different leaders in the gasoline industry, plus the construction of the station, taking it from the ground up, employing help to get it up to a terrifically high gallonage, where it was the second highest gallonage unit of the Texaco Oil Company in Northern California, and then executing a lease for a term of seven years with a seven-year option at a guaranteed rental of $1400

a month. That was the consideration. . . . That was the consideration for my getting the undivided one-half interest in the partnership business and the assets, plus two years of hard labor.'' On November 30, 1949, before Mrs. Silver had put up any money, except an original advance of $250, both she and Schwartz signed a written agreement, the first sentence of which states: ''I hereby acknowledge that one-half ($\frac{1}{2}$) of the assets of the partnership business standing to my credit in the partnership business operated under the name Gas-O-Mat No. 2 have been contributed by Mrs. Beatrice Silver in consideration of my services in organizing said business.'' The trial court adopted findings in substantially the same language.

Appellant, Beatrice Silver, states: ''The principal ground for appeal is the claim that appellant was prevented from having a fair trial by reason of an abrupt termination of the trial by the court before all the evidence was in and before the case was submitted for decision.'' The record shows that, after appellant rested, respondents moved for a nonsuit, which was denied. Respondents then called Schwartz as their only witness and, at the conclusion of his testimony, respondents rested. Appellant's attorney then said: ''Your Honor, it is two minutes to 4:00. Mrs. Silver is here. [She had not been called previously.] Does your Honor wish to go ahead? THE COURT: Yes. Will she be your last witness? MR. KOLB [Appellant's attorney]: She will be the last witness, most likely. THE COURT: All right.'' Appellant then took the witness stand and testified. When she had concluded, her counsel and the court engaged in a discussion of the case which covers four pages of the transcript. The concluding remark made by appellant's counsel is as follows: ''The only conclusion that can be drawn on this matter is that it was a loan to the partnership and must be repaid by the partnership.'' The court thereupon announced judgment for the defendants. Nothing further transpired or was said by anyone. There was no protest, no request to reopen, no offer of additional proof. In short, there was nothing to apprise the court that appellant had anything further to offer in the way of evidence. Under such circumstances, it cannot be said that the court was required to ask, ''Is the matter submitted?'' even though it is customary to do so.

The trial was held on June 23, 1954. A letter from appellant's counsel to the trial judge, dated August 13, 1954, was made a part of the record on appeal by stipulation. It states

that appellant's counsel had not filed objections to respondents' proposed findings because the action had "never been submitted." However, the trial court could hardly have been more explicit when it said to appellant's counsel, at the very end of the trial: "I will deny your motion and give judgment for the defendant." The findings and judgment were signed on August 17, 1954. █ Assuming, without so holding, that the letter was an informal request to reopen the case for the purpose of taking additional evidence, the granting or denying of such request is within the sound discretion of the court. (24 Cal.Jur., p. 768.) █ By its signing of the findings and judgment on August 17, 1954, which was presumably after receipt of said letter, the court by implication denied such request. █ Moreover, a letter such as this does not constitute a motion to reopen and does not require the trial court to make any ruling thereon.

Appellant's next contention is that "the court erred in denying plaintiff's motion for a new trial without permitting said motion to be heard on its merits." The notice of intention to move for a new trial was filed on August 27, 1954. On September 17, 1954, appellant's affidavit in support of the motion was filed and the following minute order made: "In this action, the motion for a new trial was *submitted,* on affidavit, *without argument.*" (Emphasis added.) On September 24, 1954, the motion was denied and the following minute order made: "In this action, heretofore submitted, the Court ordered the motion for a new trial denied." █ Appellant did not request an opportunity for oral argument and the law does not require it. (*Collins* v. *Nelson,* 41 Cal.App.2d 107, 113 [106 P.2d 39].)

Appellant's real criticism of the trial court's action in ruling upon the motion seems to be that it did so before the time allowed to respondents to file counteraffidavits had expired. Respondents were allowed up to and including September 27, 1954, to do so (Code Civ. Proc., § 659a) and, in fact, such a counteraffidavit was executed on that date. █ However, this was not before the court on September 24, 1954, when the ruling was made, and hence could not have been considered by it. The same limited record is before us. (*Broads* v. *Mead,* 159 Cal. 765, 768 [116 P. 46, Ann.Cas. 1912C 1125].) In reviewing the trial court's denial of the motion, we must treat appellant's affidavit in support of her motion as being uncontroverted.

█ Appellant's affidavit states that the "abrupt termina-

tion'' of the trial, heretofore discussed, prevented her from calling as a witness the accountant for the partnership, who would have testified that, as of November 30, 1949, one-half of the assets of the partnership business standing to the credit of Schwartz was the sum of $125 only. The testimony already in the record established this without dispute. Appellant had put up $250 on November 4, 1949, and this was all until after the signing of the agreement on November 30, 1949. The second advance was for $9,750 and was made on December 5, 1949. Appellant's counsel had already made the point during the trial that the ''one-half (½) of the assets'' referred to in the agreement of November 30, 1949, referred only to the original payment of $250 and not to the ultimate total. The accountant's proposed testimony would not have contradicted the record in this respect. The trial court interpreted the clause as referring to *all* of the *contributions* agreed to be made by appellant. The accountant would not, of course, be allowed to give his legal conclusion as to the meaning of such clause. Appellant's affidavit alleges that the accountant also would testify that Schwartz did not treat his one-half of the moneys advanced by her as income to himself. Appellant argues that such moneys could only be (1) a gift, (2) a loan, or (3) income. Schwartz testified, in effect, that his one-half interest was not a gift. Therefore, appellant continues, if it was not treated by Schwartz as income, it must of necessity be a loan. This contention was brought up by appellant during the trial and will be hereinafter discussed.

Appellant's affidavit next states that she wanted to introduce into evidence the deposition of Schwartz, taken in this action before the trial for the purpose of getting into evidence an admission by him that the moneys advanced were not gifts. It is crystal clear from the testimony given by Schwartz at the trial that he does not contend that there was any gift to him. The admission would be merely cumulative and most certainly not contradictory.

Lastly, appellant's affidavit states that she was desirous of, but was prevented from, moving to amend her answer by alleging that the instrument of November 30, 1949, did not correctly set forth the understanding of the parties. Appellant was allowed to testify fully concerning the execution of the agreement and the surrounding circumstances. After she had finished with her testimony on direct examination, appel-

lant's counsel then said: "Now, your Honor, we will go into rebuttal testimony, based on Defendants' Exhibit A." Then appellant testified at length that she did not understand the agreement, that she was rushed into signing it, that she trusted Schwartz and that she did not have any independent advice. The record shows that appellant's counsel, at the conclusion of appellant's testimony, did move to amend the answer "on the ground that the same is not a true agreement between the parties and does not express the intentions of the parties." The trial court said: "I have given you an opportunity to do that [attack the agreement] here in the trial." The motion was denied and there is no showing that the court abused its discretion in so ruling.

It is elementary that a motion for a new trial is directed to the sound discretion of the trial court, and a refusal to grant such a motion will not be reversed upon appeal in the absence of a clear showing that the trial court has abused its discretion. (20 Cal.Jur., "New Trial," § 13.)

Appellant next complains of the exclusion of evidence as to whether Schwartz treated one-half of the moneys advanced by appellant as income to him on his personal income tax return. Schwartz was not required to so report said moneys *until* the circumstances were such as to make them taxable as income. When an individual receives an interest in partnership capital as compensation for services, the value of such interest is taxed as follows: "Such amount is taxable to the partner at such time as there are no substantial restrictions or conditions on his right to withdraw or otherwise dispose of such amount, or when in fact he does obtain such amount (either through a distribution or by sale or exchange of his partnership interest), whichever event first occurs." (Regulations of the Internal Revenue Service, § 1.721-1; 2 Federal Tax Guide (P-H) 23, 493.) Hence, until the proper foundation is laid to show any of the foregoing conditions, it is immaterial whether Schwartz reported the moneys as income. Such foundation not having been established, or proof offered to establish the same, the objection was properly sustained.

Appellant's last point concerns a written acknowledgment of indebtedness by the partnership to the appellant which was executed by Elliot four days after this action was filed. It was admitted in evidence. Appellant contends that it is *binding* upon the partnership, citing section 15011 of the Corporations Code, and *"compels* a judgment for plaintiff."

This is not the law. Section 15011 provides: "An admission or representation made by any partner concerning partnership affairs within the scope of his authority as conferred by this act is *evidence* against the partnership." (Emphasis added.) Each of the cases cited by appellant concerns the *admissibility* of a partner's admission. None of said cases holds that such an admission is *conclusive*. The trial court was, at most, required to weigh this "acknowledgment of indebtedness" against all opposing evidence, and it could take into consideration that Elliot is appellant's son, that her attorneys prepared the document and presented it to him in Los Angeles for signature, and that Elliot's participation in the entire transaction was almost entirely through appellant, acting under a power of attorney.

For the foregoing reasons, the judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.