[Civ. No. 26646. First Dist., Div. One. July 6, 1970.]

A. KIMMEL, Plaintiff and Respondent, v.
EDWARD KEEFE, Defendant and Appellant.

**COUNSEL**

Quantz & Tanner and Charles J. Quantz for Defendant and Appellant.

Berlin, O'Grady, Doll & Goodman, Sidney L. Berlin and Fred R. Brinkop for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Edward Keefe appeals from a judgment in favor of plaintiff A. Kimmel.

Among other things, and as pertinent here, the complaint alleged: that one E. T. Komsthoeft during the period August through December 1965 under conditional sales contracts purchased from Kimmel certain furniture of the reasonable value of $10,000, on which a balance of $9,309.52 remained unpaid; that Komsthoeft was in default under the contracts; that Kimmel was entitled to the possession of the furniture; that defendant Keefe

wrongfully claimed to be the owner of the furniture; that "notwithstanding that due demand therefor has been made, defendants, and each of them have refused to return" the furniture to Kimmel; and that "pursuant to the terms of said contracts, the defendants, and each of them, became and are indebted to the plaintiff for the reasonable value of the use of the property in the sum of $400 per month."

Komsthoeft defaulted and is apparently insolvent.

The following undisputed facts were developed at the trial. Kimmel was the operator of a furniture store. Over a period of time, August 25 to December 15, 1965, he sold to Komsthoeft for use in his apartment house furniture at a total price of $10,309.52. The transactions took the form of conditional sales contracts under which Kimmel retained title to the furniture until paid. In the latter part of 1965 Keefe purchased the apartment house and the subject furniture from Komsthoeft. The sale appears not to have been handled by an escrow holder. A "Modification Agreement" dated December 30, 1965, between Komsthoeft and Kimmel relating to the apartment house sale was placed in evidence. It purported to be a modification of a December 13, 1965 agreement (not in evidence), and stated among other things, "Seller represents that the [claim of Kimmel is] unsecured [and Kimmel has] no rights by agreement to repossess the merchandise now on the premises."

A conflict did develop at the trial as to whether Keefe had notice, prior to the time he purchased the apartment house, of Kimmel's conditional sales contracts and ownership of the furniture. In this respect Kimmel testified that: late in 1965 he was told by Komsthoeft that the building was being taken over by Keefe to whom he should look for payments on the furniture; Kimmel then contacted Keefe who came to the store (it was sometime in November or December but before Christmas of 1965); Keefe said he was taking over the building but that the deal was not yet consummated; Kimmel then pointed out his security interest in the furniture and showed the Komsthoeft conditional sales contracts to Keefe. Kimmel's testimony was corroborated by one of his employees who left his employment around the second week of December 1965. The employee testified that while he was employed by Kimmel in November 1965 Keefe came to the store and said he was taking over Komsthoeft's apartment house, and that Kimmel then showed Keefe the conditional sales contracts covering the furniture of the building.

█ The principle issue at the trial, and here, is the question whether Keefe did in fact have knowledge of Kimmel's security interest in the furniture prior to his purchase of the apartment house and its contents. If Keefe had such notice, then he took the furniture subject to Kimmel's title

under the conditional sales contracts. (See Com. Code, § 9301, subd. (1) (c).) The trial court found that Keefe purchased the apartment house and the subject furniture with "full knowledge" of Kimmel's security interest. Although there was evidence to the contrary, that which we have pointed out is "substantial"; it supports the trial court's finding by which we are bound on this appeal. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

Although the complaint did allege that "pursuant to the *terms of the contract* defendants" (italics added) became indebted for the reasonable value of the use of the property, the case appears to have been tried on the theory that Keefe was not bound by the contract. As to him it was contended that Kimmel was entitled to the possession of the furniture, and the relief sought was its possession and "damages for its detention." This is the remedy to which Kimmel was entitled under the facts as found by the court. (Code Civ. Proc., § 667; *Guerin* v. *Kirst,* 33 Cal.2d 402, 409 [202 P.2d 10, 7 A.L.R.2d 922].) From the evidence before the court it must be inferred that Keefe was in a position to deliver the furniture to Kimmel; there was no showing to the contrary.

Keefe makes several contentions of error regarding the trial court's findings.

■ A finding as to the value of the furniture was unnecessary to support the judgment. There is accordingly no merit to Keefe's contention that the trial court erred in failing to make such a finding. ■ Keefe complains of the finding that Komsthoeft and Keefe had been and were as of January 1, 1966, in default on the conditional sales contracts. By this finding the court undoubtedly meant that Keefe, a nonsignatory of the contract in possession of the furniture, had failed to place the contracts in good standing. In any event such a finding was superfluous and nonprejudicial since whether Keefe was a party to the contracts was not in issue at the trial. For the same reasons the court did not err in failing to make Keefe's requested special findings whether Keefe was legally obligated under the contracts and, if so, the contracts to which he was legally bound. We further conclude that the finding that Kimmel had "demanded" of Keefe return of the furniture is supported by substantial evidence, and comports with the demand requirement of law. ■ And finally we see no error in the failure of the court to specially find "as to the dollar amount of the security interest" of Kimmel of which Keefe had knowledge. No contention is made by Keefe that he had knowledge of less than the full amount of Kimmel's security interest. Such a finding was accordingly unnecessary to the judgment.

No error is seen in the trial court's refusal to continue the trial in order that witness Diel might be personally present. The request was not made until the case was called for trial, and the deposition of the witness was available and later placed in evidence. The denial of the continuance clearly did not deny Keefe a fair hearing. An application for a continuance is addressed to the sound discretion of the court. (*Schlothan* v. *Rusalem*, 41 Cal.2d 414, 417 [260 P.2d 68].) There was no abuse of discretion.

Keefe contends error in the trial court's failure to "grant a hearing" on his motion for a new trial. We note that in support of his motion Keefe filed several declarations under penalty of perjury and written points and authorities. These papers were responded to in writing by Kimmel. The record does not show, and Keefe does not contend, that he sought an opportunity for oral argument.

It is settled that although entitled to a hearing, one does not have a right to orally argue a motion for a new trial. (*Bristol* v. *Bryan*, 215 Cal.App.2d 254, 258 [30 Cal.Rptr. 166]; *Silver* v. *Schwartz*, 142 Cal. App.2d 92, 97 [297 P.2d 1018]; *Collins* v. *Nelson*, 41 Cal.App.2d 107, 113 [106 P.2d 39]; *Morel* v. *Simonian*, 103 Cal.App. 490, 495 [284 P. 694].) Here Keefe's motion for a new trial appears to have been fully argued by briefs and supporting declarations. It will be presumed that these arguments were considered before the court ruled on the motion. And it has been held that a movant for a new trial may not complain of a lack of opportunity for oral argument where the record, as here, does not disclose an effort by him to orally argue the motion. (*Bristol* v. *Bryan, supra,* 215 Cal.App.2d 254, 258; *Silver* v. *Schwartz, supra,* 142 Cal.App.2d 92, 96.) Accordingly we see no error here.

Even should we consider, *arguendo,* that there was a failure to hold a hearing on Keefe's motion for a new trial, such failure would not have the effect of invalidating the judgment. It has been held that a moving party's *only* remedy for failure to hold such a hearing is by application for mandate to an appellate court. (*Estate of Shepard,* 221 Cal.App.2d 70, 73 [34 Cal.Rptr. 212]; *Clay* v. *Lagiss,* 143 Cal.App.2d 441, 451 [299 P.2d 1025]; *Free* v. *Furr,* 140 Cal.App.2d 378, 385-386 [295 P.2d 134].) And errors which might have been pointed out at the hearing may of course be reviewed on appeal from the judgment. (*Estate of Shepard, supra,* pp. 70, 73.)

Keefe's final contention relates to the damages fixed by the judgment.

As pertinent here the judgment provides:

"[¶ 2] It Is ADJUDGED that the plaintiff, A. KIMMEL, doing business under the firm name and style of SAN MATEO FURNITURE COMPANY re-

cover from EDWARD KEEFE the sum of $9,309.52 principal $1,995.00 interest and $56.55 costs and

"[¶ 3] IT IS FURTHER ADJUDGED that defendant, EDWARD KEEFE shall have fifteen (15) days after this judgment becomes final in which to satisfy said judgment or in default of the payment hereof plaintiff shall thereupon be entitled to recover from the defendant, EDWARD KEEFE the possession of the furniture described in Exhibits A, B, C, D, and E of the complaint on file herein together with damages at the rate of $400.00 per month for detention and use of said property from the first day of January, 1966 until the date of repossession."

The judgment was undoubtedly intended to provide for recovery by Kimmel of the subject furniture and damages for its detention, which damages were not to exceed the amount due Kimmel on his contracts with Komsthoeft.

Among other things Keefe points out that if for any reason he cannot, or does not, within 15 days of the finality of the judgment pay an amount equal to the balance due Kimmel on his contracts, with interest, he would then automatically become liable for a far greater sum. This appears to be correct; the $400 monthly damages for detention of the furniture would at this date in 1970 total many thousands of dollars more than the amount now due on the conditional sales contracts.

The only evidence of damages caused by Keefe's detention of the furniture came from Kimmel. He testified that its reasonable rental value was about $400 per month. He added that such furniture when placed in furnished rented apartments depreciates rapidly over a period of two years, but at that point it still had some value. At the trial held about 2½ years after the sales, Keefe estimated its then value at $2,000. From the evidence it would appear that the furniture, apparently still in Keefe's possession, would have little or no market value at the present time.

There can be no question but that the trial court's finding that $400 per month was the reasonable value of the use of the furniture, was supported by substantial evidence. Nevertheless it would be inequitable to allow Kimmel to recover more than the amount due on his conditional sales contracts with legal interest thereon. As said in *U.S. Machinery Co. v. International Metals Dev., Inc.,* 74 Cal.App.2d 5, 14 [168 P.2d 37], "In conditional sales the title is held only for security, and when a vendor gets the whole amount due him, together with interest, costs and attorney's fees, he has recovered all that he is equitably entitled to under his contract." (See also *Guerin* v. *Kirst, supra,* 33 Cal.2d 402, 411; *Martin* v. *Hollins,* 118 Cal.App. 561, 565 [5 P.2d 899].) And damages must in all cases be

reasonable. (Civ. Code, § 3359.) For these reasons the judgment should be amended to provide that in any event the damages for detention and use of the furniture (now apparently of nominal value) shall not exceed the amount due on the conditional sales contracts, with legal interest thereon.

The superior court will, on appropriate findings, modify the judgment by striking therefrom paragraphs two and three, and by substituting therefor the following: "It is adjudged that plaintiff A. Kimmel have and recover from defendant Edward Keefe the possession of the furniture described in Exhibits A, B, C, D and E of the complaint on file herein together with damages at the rate of $400 per month for detention and use of said property from the first day of January 1966 until the date of repossession; provided that the damages for detention and use of said property shall not exceed an amount equal to the unpaid purchase price of $9,309.52, with interest from January 1, 1966." As so modified the judgment is affirmed. Respondent will recover his costs on appeal.

Molinari, P. J., and Sims, J., concurred.