Filed 12/22/20  Stremfel v. Kalantar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JORDAN STREMFEL, | B300053 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC657433) |
| v. | |
| NADER KALANTAR, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Holstein, Taylor and Unitt and Brian C. Unitt; Law Offices of Patricia A. Law and Patricia A. Law, for Plaintiff and Appellant.

Law & Brandmeyer, and Bryan C. Misshore; Schmid & Voiles and Denise H. Greer, for Defendant and Respondent.

---

**INTRODUCTION**

Respondent Nader Kalantar, M.D., performed a tonsillectomy on appellant Jordan Stremfel, followed by emergency surgery to correct a post-tonsillectomy hemorrhage. Anesthesiologist Phillip K. Lau, M.D., participated in the emergency procedure, during which Dr. Kalantar performed a tracheostomy at Dr. Lau's request. Stremfel sued Dr. Kalantar and Dr. Lau for medical negligence. More than a year later, Dr. Kalantar moved for summary judgment. Nine months later, without obtaining Dr. Lau's testimony or even noticing his deposition, Stremfel's counsel filed a notice of non-opposition to Dr. Kalantar's summary judgment motion, which the trial court granted. Only then did Stremfel's counsel notice and take Dr. Lau's deposition. Stremfel then filed a motion for a new trial on the ground of newly discovered evidence, viz., Dr. Lau's deposition testimony (along with an expert declaration relying on it). The motion was denied as a matter of law because the court did not rule on it within 75 days after Dr. Kalantar served Stremfel with notice of entry of judgment. (See Code Civ. Proc., § 660, subd. (c).)

On Stremfel's appeal from the judgment in Dr. Kalantar's favor, he contends the trial court erred by denying his motion for new trial. The parties agree we may

2

review the merits of the motion as if it had been denied on the merits. (See *In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 152, citing *Estate of Shepard* (1963) 221 Cal.App.2d 70, 73; *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 301, 305-306.)[1]

We find Stremfel's motion for new trial to be without merit, as his counsel's unreasonable failure to depose Dr. Lau before declining to oppose Dr. Kalantar's motion for summary judgment prevented Stremfel from making the required showing of reasonable diligence. Accordingly, we affirm.

## FACTUAL BACKGROUND
### A. *Stremfel's Medical Treatment and Complaint*

On May 10, 2016, Dr. Kalantar performed a tonsillectomy on Stremfel. On May 18, 2016, Stremfel began spitting up blood and was transported by ambulance to Huntington Memorial Hospital. An otolaryngologist

---

[1] As Dr. Kalantar observes, courts have criticized the rule allowing appellate review of the merits of a new trial motion denied by operation of law (at least as applied in the face of the appellant's responsibility for the absence of a timely decision on the motion). (See *In re Marriage of Liu, supra,* 197 Cal.App.3d at 153, fn.3; *Estate of Shepard, supra,* 221 Cal.App.2d at 73-75.) But Dr. Kalantar neither asks us to depart from the rule, nor cites any authority departing from it. (See *Estate of Shepard, supra,* at 75 ["since the rule is so well established, we feel bound to follow it"]; *In re Marriage of Liu, supra,* at 153, fn.3 [same, quoting *Estate of Shepard*].)

3

diagnosed him with "severe posttonsillectomy hemorrhage, which can be life threatening," but observed that his airway was then secure and unobstructed. With Stremfel's consent, the otolaryngologist arranged for Dr. Kalantar, who was also on staff at the hospital, to conduct surgery to correct the hemorrhage.

In his operative report concerning the May 18, 2016 emergency procedure, Dr. Kalantar identified Dr. Lau as the anesthesiologist. Dr. Kalantar wrote, "The patient had aspirated a significant amount of blood and clot products, which became evident as [Dr. Lau] tried to intubate the patient at the start of the procedure and was unable to do so or pass a tube as a result. Desaturation [of Stremfel's oxygenation] ensued, and I placed an emergency surgical airway (tracheostomy)." Dr. Kalantar described the successful completion of the tracheostomy and the hemorrhage surgery. He did not state he received assistance from any other surgeon, and he did not mention Thuc Bach, M.D. A "Perioperative/Procedural Record" from the hospital indicated that Dr. Bach performed the role of "Surgeon Assist" for a portion of the emergency procedure, but did not elaborate.

In a June 29, 2016 record of Stremfel's follow-up treatment, Dr. Kalantar observed that Stremfel's recovery had been "complicated" and marked by "atypical tremor type symptoms," and that Stremfel was "on disability from work due to the movement disorder."

4

On April 24, 2017, Stremfel filed a medical negligence complaint against Dr. Kalantar, a number of Doe defendants, and other defendants irrelevant to this appeal. On March 23, 2018, he filed an amendment naming Dr. Lau as an additional defendant (replacing a Doe defendant).

**B.** *Dr. Kalantar's Motion for Summary Judgment*

Over a year after the filing of the complaint (on May 4, 2018), Dr. Kalantar moved for summary judgment. He submitted expert declarations from an otolaryngologist and an anesthesiologist, along with various records concerning Stremfel's treatment, which the experts had reviewed. Both experts opined that Dr. Kalantar had complied with the standard of care in treating Stremfel. The anesthesiologist additionally opined that none of Dr. Kalantar's actions or omissions caused Stremfel's alleged injuries. These opinions formed the basis of Dr. Kalantar's motion for summary judgment. A key factual premise for his motion was that Stremfel "never stopped breathing" during the May 18 emergency procedure and "only experienced nominal oxygenation desaturation."

The hearing on Dr. Kalantar's motion was initially scheduled for July 25, 2018, but the parties agreed to continue it to February 27, 2019, for the purpose of conducting further discovery, including Dr. Kalantar's deposition.

**C.** *Stremfel's Pre-Opposition-Deadline Discovery*

On September 11, 2018, Dr. Lau answered the complaint. Three months later (on December 11, 2018), Stremfel served interrogatories on Dr. Lau.

On December 19, 2018, Stremfel deposed Dr. Kalantar. Dr. Kalantar testified that Stremfel experienced a period of "low oxygen" during the May 18 emergency procedure, but Stremfel's oxygenation level was "never zero." He further testified that he performed the tracheostomy, at Dr. Lau's request, "[a]s soon as it became clear that there was an issue with oxygen desaturation . . . ." He did not recall "to what degree [Stremfel] desaturated" (i.e., what Stremfel's lowest oxygenation level was). Nor did he recall, even as an estimate, the time period during which Stremfel's oxygenation level was lowered. Stremfel's counsel asked Dr. Kalantar several questions about Dr. Lau's conduct, some of which Dr. Kalantar could not answer.[2] Stremfel's counsel

---

[2] "Q. . . . [D]o you recall Dr. Lau asking you any questions? Do you recall him sharing with you any concerns that he had? [¶] A. I can't remember."

"Q. Do you recall whether there was anything that was done by Dr. Lau which you understood to be particular to the fact that this patient had had a tonsil bleed in terms of his introduction of the ET tube? In other words, did he say, 'I'm going to come at it from this angle,' or 'I'm going to use a smaller tube'? [¶] Was there something that you recognized he was doing to deal with the fact that there had been a tonsillar bleed? [¶] A. Not -- I don't -- I don't know. I don't remember."

"Q. Did you and Dr. Lau have any discussion about the events that had occurred with the desaturation at the conclusion
*(Fn. is continued on the next page.)*

6

also asked "Who is Dr. Bach[,]" to which Dr. Kalantar responded, "I don't know. I do recall that we had called essentially for anybody available in the OR to come assist as soon as that airway issue had started . . . . [¶] I'm not sure who Dr. Bach is, but I do remember somebody was assisting me, just holding and sort of retracting, and that must be who that was."

At the end of Dr. Kalantar's December 19, 2018 deposition, Stremfel's counsel asked Dr. Lau's counsel to provide dates in January for Dr. Lau's deposition. Dr. Lau's counsel did not do so. In a letter sent nearly a month later (on January 14, 2019), Stremfel's counsel requested proposed

---

of this surgery? [¶] A. Yes. [¶] Q. Okay. And what was the substance of that discussion? [¶] A. . . . [W]e were just discussing, you know, how the airway looked and -- but that's pretty much it, just what the situation was in the airway and -- and what we can do to clear the airway."

"Q. . . . Did you observe Dr. Lau do any type of pre-ET tube placement examination of the patient? [¶] A. I personally didn't observe it."

"Q. . . [D]o you recall what Dr. Lau was saying to you as he was trying to place the ET tube? Any information he was sharing with you? [¶] A. He wasn't sharing much information. I don't -- I don't really recall him saying much at all."

"Q. Did [Dr. Lau] tell you what he thought was going on or why he wanted a surgical airway, or was that something that was just understood? [¶] A. Not necessarily understood either way. But he didn't -- he didn't tell me. He just told me he needed a surgical airway. [¶] Q. Okay. And did he withdraw the ET tube at that point in time? [¶] A. I don't -- I can't remember."

deposition dates "good for" Dr. Lau and his counsel, without specifying any preferred time frame. She wrote that her office would follow up if Dr. Lau's counsel did not respond "in the next couple weeks." The record does not disclose the response, if any, of Dr. Lau's counsel.

**D.** *Unopposed Entry of Summary Judgment, and Notice Thereof*

On February 13, 2019 (the deadline for Stremfel's opposition to the summary judgment motion), Stremfel filed a notice of non-opposition to Dr. Kalantar's motion. On February 27, 2019, the trial court issued a minute order without a hearing, concluding that Dr. Kalantar's expert declarations satisfied his initial burden as a summary judgment movant, and that the motion should be granted "[i]n light of the lack of opposition (and the affirmative notice of non-opposition) . . . ." On May 21, 2019, the court entered judgment in Dr. Kalantar's favor.

On May 24, 2019, Dr. Kalantar served notice of entry of judgment on Stremfel. This triggered a deadline of August 7, 2019, for the trial court to rule on Stremfel's subsequently filed motion for new trial. (See Code Civ. Proc., § 660, subd. (c) ["[T]he power of the court to rule on a motion for a new trial shall expire . . . 75 days after service on the moving party by any party of written notice of entry of judgment . . . . If the motion is not determined within the 75-day period . . . the effect shall be a denial of the motion without further order of the court"].)

8

### E. *Dr. Lau's Deposition*

On April 5, 2019 (nearly two months after the filing of Stremfel's non-opposition), Stremfel's counsel "blind [n]oticed" Dr. Lau's deposition. Dr. Lau objected to the date selected by Stremfel's counsel, and the parties eventually agreed to proceed with the deposition on June 7, 2019. In the interim (on May 2, 2019), Dr. Lau served his responses to Stremfel's interrogatories.

During his June 7, 2019 deposition, Dr. Lau testified that Stremfel had zero percent oxygenation for "maybe three minutes." He acknowledged that the oxygenation level was unclear on the anesthesia record then in Stremfel's counsel's possession.[3] He also testified that Dr. Kalantar delayed the tracheostomy. Specifically, he testified that initially, his "repeated requests of Dr. Kalantar to perform the trach were not met by any action," as Dr. Kalantar merely responded, "'Are you sure? Are you sure?'" About one or two minutes after Dr. Lau first asked Dr. Kalantar to perform the tracheostomy, Dr. Lau asked a nurse to bring a different surgeon to perform it. Within two minutes, Dr. Bach arrived. Dr. Lau believed that Dr. Kalantar "had started before Dr.

---

[3]    In response to Dr. Lau's testimony, Stremfel's counsel requested and received from Huntington Memorial Hospital a differently formatted version of the anesthesia record, which corroborated Dr. Lau's testimony that there was a period of zero percent oxygenation.

Bach came into the room," but testified that both Dr. Kalantar and Dr. Bach performed the tracheostomy.

### F. *Stremfel's Motion for New Trial*

On June 7, 2019 (within 15 days of the May 24, 2019 service of notice of entry of judgment), Stremfel filed a notice of intention to move for a new trial on the ground of newly discovered evidence, viz., Dr. Lau's deposition testimony. (See Code Civ. Proc., § 659, subds. (a)-(b) [party intending to move for new trial shall, within 15 days of service of notice of entry of judgment, file "a notice of his intention to move for a new trial," which "shall be deemed to be a motion for a new trial on all the grounds stated in the notice"].) Stremfel filed his brief and supporting documents 10 days later, on June 17, 2019. (See Code Civ. Proc., § 659a ["Within 10 days of filing the notice, the moving party shall serve upon all other parties and file any brief and accompanying documents"].)

Stremfel submitted, inter alia, a declaration from otolaryngologist Abie Mendelsohn, M.D. Dr. Mendelsohn declared that before summary judgment was entered, he had reviewed the medical records and the testimony from Stremfel's and Dr. Kalantar's depositions, and had informed Stremfel's counsel that he could not endorse the negligence claim against Dr. Kalantar because nothing in those materials "evidenced any gross deviation from the standard of care" on Dr. Kalantar's part. He further declared that he had recently reviewed Dr. Lau's testimony, and opined that if Dr. Lau's testimony was accurate, Dr. Kalantar breached

10

the standard of care in a manner resulting in poor oxygenation and injury to Stremfel's brain.

In her motion brief, Stremfel's counsel argued, inter alia, that she had been reasonably diligent in producing Dr. Lau's deposition testimony, relying on a timeline of the litigation and on the asserted absence of "reason to suspect that Dr. Kalantar lied in his discovery and his deposition, [and] that he falsified the medical records . . . ." In opposition, Dr. Kalantar argued, inter alia, that reasonably diligent counsel would have deposed Dr. Lau much earlier, commenting, "Surely, the most basic discovery includes the testimony of other defendants in the case, especially [when one such defendant is] a witness to the incident in question." In reply, Stremfel's counsel argued, inter alia, "The nature and materiality of [Dr. Lau's] testimony could not have been anticipated."

### G. *Hearing, Continuance, and Denial by Operation of Law*

On July 16, 2019, the trial court held a hearing on Stremfel's motion for new trial. At the outset of the hearing, the court confirmed counsel had reviewed its tentative order denying the motion on the ground that Stremfel had failed to file a timely notice of intention. Stremfel's counsel provided the court with a conformed copy of her timely notice, and said, "I wanted to clear that up with the court and then, hopefully, have the court set us a new date so that we can come back and have this heard on its merits." The court

asked Dr. Kalantar's counsel if he agreed, and he responded, "It appears to me that the papers were filed timely. And if the court has not had an opportunity to . . . review the matter on the merits, then perhaps [Stremfel's counsel's] suggestion is well-taken." The court proposed July 30, 2019, as the date for the continued hearing. Stremfel's counsel responded that she was required to appear for federal grand jury service on that date. The court then suggested August 13, 2019, and both counsel agreed to that date -- failing to mention the statutory deadline of August 7, 2019, for a ruling on the motion.

Upon the expiration of the August 7, 2019 deadline, the court lost jurisdiction to rule on the motion, which was denied by operation of law. (See Code Civ. Proc., § 660, subd. (c).) At the August 13, 2019 hearing, the court and both counsel agreed the court no longer had jurisdiction to rule on the motion. The court issued a minute order stating the same.

Stremfel timely appealed from the judgment.

## DISCUSSION

Stremfel contends the trial court erred by denying his motion for new trial, which he made on the ground that Dr. Lau's deposition testimony was newly discovered, material evidence which Stremfel could not, with reasonable diligence, have produced in opposition to Dr. Kalantar's motion for summary judgment.

A. *Principles*

12

A party may move for a new trial on the ground of "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." (Code Civ. Proc., § 657, subd. (4).) "Generally, a party seeking a new trial on this basis must show that '(1) the evidence is newly discovered; (2) he or she exercised reasonable diligence in discovering and producing it; and (3) it is material . . . .'" (See *Doe v. United Air Lines, Inc.* (2008) 160 Cal.App.4th 1500, 1506 (*United Air Lines*).) "Because of the possibility that the moving party may have been guilty of neglect, this ground is looked upon with 'distrust and disfavor,' and a strong showing of the essential requirements must be made." (8 Witkin, Cal. Procedure (5th ed. 2020) Attack on Judgment in Trial Court, § 31.) In particular, "[t]he cases strongly emphasize the requirement of diligence, at times referring to 'a high degree' or 'a strict showing.' Lack of diligence is therefore a frequent reason for denial of the motion and an occasional reason for reversal of an order granting it." (*Id.*, § 34; see also Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2020) ¶ 18:153.4 ["Lack of diligence is the most common reason for denying the motion"].)

### B. *Analysis*

We find Stremfel's motion for new trial to be without merit, as his counsel's unreasonable failure to depose Dr. Lau before declining to oppose Dr. Kalantar's motion for

summary judgment prevented Stremfel from making the required showing of reasonable diligence. Dr. Lau was not only a codefendant, but also a percipient witness to Dr. Kalantar's conduct during the May 18 emergency procedure. Any competent plaintiff's counsel would have deposed Dr. Lau. (See 2 McDonald, Cal. Medical Malpractice Law & Practice (2020 ed.) § 15:1 ["Attorneys who regularly engage in malpractice litigation assume that the deposition of each principal player eventually will have to occur. . . . The deposition[] [transcript], containing the witness'[s] detailed responses left largely unvarnished by the influence of the deponent's attorney, . . . can often become the single most important document in the action"].) Though Stremfel's counsel eventually did depose Dr. Lau, her delay was unreasonable. At the time Dr. Kalantar filed his motion, Stremfel's complaint had been pending for over a year. An additional *nine months* passed between the filing of the motion and Stremfel's February 13, 2019 opposition deadline. Thus, with only modest effort, Stremfel's counsel could have deposed Dr. Lau in time to consider his testimony in deciding whether to oppose Dr. Kalantar's motion for summary judgment. Her failure to make that modest effort prevented Stremfel from showing the reasonable diligence necessary to establish the merits of his motion for new trial.[4]

---

[4] Though Stremfel asserts that "Dr. Lau and his counsel did not make his deposition easily obtainable," the record reveals nothing that Dr. Lau did to obstruct the taking of his deposition. Stremfel merely faults Dr. Lau for failing to respond to Stremfel's
*(Fn. is continued on the next page.)*

14

(See *United Air Lines*, *supra*, 160 Cal.App.4th at 1508-1509 [trial court erred by finding new-trial movant had been reasonably diligent in producing expert's declaration after summary judgment was entered, where movant's counsel retained expert before summary judgment hearing but neither moved for continuance nor asserted facts demonstrating inability to obtain declaration before hearing]; cf. *New York Times Co. v. Superior Court* (2005)

counsel's "attempted courtesy" in requesting convenient deposition dates. But nothing prevented Stremfel's counsel from noticing Dr. Lau's deposition for a unilaterally selected date, as she eventually did. Had she done so earlier, she could have protected her client's rights and still extended Dr. Lau the courtesy of rescheduling his deposition to a mutually agreed date. (See Dunne on Depositions in California (2019) § 3:9 ["A[] courtesy occasionally employed is to unilaterally and formally notice the deposition but accompany the notice with a cover letter that requests all parties to contact the secretary of the noticing party if a different time for the deposition is desired"].)

Dr. Kalantar argues that in response to Dr. Lau's silence regarding deposition dates, Stremfel's counsel could have moved for and obtained a continuance of the summary judgment hearing under Code of Civil Procedure section 437c, subdivision (h), or the trial court's discretionary powers. Stremfel disputes whether the court would have granted a continuance. We need not resolve this dispute. As Dr. Kalantar observes, the hearing had already been continued from July to February, by the parties' agreement, in order to allow them to conduct further discovery. Even without a second continuance, Stremfel's counsel had ample time to depose Dr. Lau before the summary judgment opposition deadline.

15

135 Cal.App.4th 206, 212-215 (*New York Times*) [trial court abused its discretion by granting appellant's motion for reconsideration based on deposition testimony produced after summary judgment was entered, where appellant's failure to produce the testimony earlier resulted from its counsel's "decision . . . not to collect evidence he thought unnecessary" at the time].)[5]

We reject Stremfel's argument that at the time his counsel declined to oppose summary judgment, she was excusably ignorant of the likely materiality of Dr. Lau's testimony. Stremfel's proffered excuse is that Dr. Kalantar and Dr. Lau prevented his counsel from foreseeing the materiality of Dr. Lau's deposition testimony. He argues Dr. Kalantar obscured the materiality of Dr. Lau's testimony by misrepresenting the emergency procedure in his operative report and deposition testimony (by failing to disclose the period of zero oxygenation and the delay in the tracheostomy, which prompted Dr. Lau to arrange for Dr. Bach's assistance). Similarly, Stremfel argues Dr. Lau obscured the materiality of his own testimony by failing to disclose the

---

[5]     In *New York Times*, we observed that the appellant's burden on its motion for reconsideration was "comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial." (*New York Times*, *supra*, 135 Cal.App.4th at 212-213.)

16

substance of his testimony in his responses to Stremfel's interrogatories. These arguments fail for two reasons.

First, the record belies Stremfel's implication that his counsel was ignorant of the likely materiality of Dr. Lau's testimony. By the date of Dr. Kalantar's December 19, 2018 deposition (nearly two months before the summary judgment opposition deadline), Stremfel's counsel evidently had determined that Dr. Lau was a material witness to the May 18 emergency procedure, as shown by the facts that (1) she had named Dr. Lau as a codefendant about nine months before; (2) she asked Dr. Kalantar several deposition questions about Dr. Lau's conduct during the emergency procedure; and (3) she asked Dr. Lau's counsel to provide dates in January for Dr. Lau's deposition. Had she prioritized Dr. Lau's deposition in light of the impending opposition deadline, she could have completed her plan to depose Dr. Lau in January, leaving time to consider his testimony in deciding whether to oppose summary judgment. (See Dunne on Depositions in California, *supra*, § 1:13 ["Only 10 days' notice (plus an additional five if mailed) of the deposition is generally required"], citing Code Civ. Proc., § 2025.270, subd. (a).)

Second, even had Stremfel's counsel been ignorant of the likely materiality of Dr. Lau's testimony, we would not find her ignorance excusable. As noted, Dr. Lau was Dr. Kalantar's codefendant and a percipient witness to Dr. Kalantar's conduct during the emergency procedure. As such, he was an obvious potential source of information

17

contradicting Dr. Kalantar's account of the procedure. Further, Dr. Kalantar's testimony provided additional reason to recognize Dr. Lau as a material witness. Dr. Kalantar did not recall the degree or length of Stremfel's oxygenation desaturation (both of which were unclear on the version of the anesthesiology record in counsel's possession at the time), and he revealed that he was assisted in the tracheostomy by Dr. Bach -- a fact conspicuously omitted from his operative report. As the doctor who requested the tracheostomy in response to an obstruction of Stremfel's airway, Dr. Lau was an obvious potential source of information regarding the tracheostomy and Stremfel's desaturation. Dr. Lau's interrogatory responses could not have obscured his status as a material witness in advance of the opposition deadline, as they were served months *after* the deadline. We find no excuse for Stremfel's counsel's purported ignorance of the likely materiality of Dr. Lau's testimony.

The cases on which Stremfel relies are distinguishable. In most, the trial courts found the movants had been reasonably diligent, and the appellate courts merely upheld those findings under a deferential standard of review. (See *Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 731; *Andersen v. Howland* (1970) 3 Cal.App.3d 380, 383-384; *Celli v. French* (1951) 107 Cal.App.2d 599, 602-603; *MacKenzie v. Angle* (1947) 82

18

Cal.App.2d 254, 258, 261-262.)[6] In the sole exception, the Court of Appeal -- reversing a contrary finding by the trial court -- held that the plaintiffs had been reasonably diligent in producing a witness's deposition testimony, despite their

[6] Moreover, the courts in the foregoing cases relied on evidence of diligence much stronger than any identified by Stremfel. (See *Santillan v. Roman Catholic Bishop of Fresno*, *supra*, 202 Cal.App.4th at 731 [deferring to trial court's finding that plaintiff had been reasonably diligent in producing declaration executed by newly identified victim of defendant's sexual misconduct, where victim had not been mentioned by any of over 100 people plaintiff had asked to identify possible victims, and plaintiff had unsuccessfully attempted to contact 50 more people]; *Andersen v. Howland*, *supra*, 3 Cal.App.3d at 382-384 [deferring to trial court's finding that plaintiff had been reasonably diligent in producing treating physician's new opinion based on finding made in late stages of trial by non-treating physician, where at time of finding, treating physician was unavailable for consultation because he had completed his testimony and departed the state]; *Celli v. French*, *supra*, 107 Cal.App.2d at 602-603 [deferring to trial court's finding that plaintiff had been reasonably diligent in producing proffered testimony of newly identified percipient witness to accident in which defendant injured plaintiff, where witness observed accident from home which she rarely occupied, and plaintiff had made "very considerable" efforts to ascertain whether anyone had been present in that home]; *MacKenzie v. Angle*, *supra*, 82 Cal.App.2d at 257, 261-262 [deferring to trial court's finding that plaintiff had been reasonably diligent in producing testimony of newly identified witness, where plaintiff produced undisputed evidence of "extensive and protracted" efforts to locate witness prior to trial, including efforts by plaintiff's counsel "ever since he had been retained"].)

19

failure to depose the witness before the trial court granted the defendant's motion for summary judgment. (*Scott v. Farrar* (1983) 139 Cal.App.3d 462, 465, 468-469.) There, however, the movants noticed the witness's deposition within seven months of filing the complaint, and several days *before* the defendant filed his motion (which was heard a mere 15 days after it was filed). (*Id*. at 465, 468.) Here, nearly two years passed after the filing of the complaint, and 11 months passed after the filing of Dr. Kalantar's motion, before Stremfel's counsel noticed Dr. Lau's deposition.

In sum, it was unreasonable for Stremfel's counsel to fail to depose Dr. Lau before declining to oppose Dr. Kalantar's motion for summary judgment. In the face of her unreasonable omission, her client could not show he exercised reasonable diligence in discovering Dr. Lau's deposition testimony, on which he relied in making his motion for new trial. Accordingly, the motion lacked merit, and the judgment must be affirmed.[7]

---

[7] We need not address Dr. Kalantar's alternative argument for an affirmance, viz., that the evidence submitted with Stremfel's new trial motion was neither newly discovered nor material.

**DISPOSITION**

The judgment is affirmed.  Dr. Kalantar is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:



COLLINS, J.



CURREY, J.